**STEPHEN D. DEMIK**
California State Bar No. 221167
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Attorneys for Ms. Tapia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY TED MOSKOWITZ)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0249-BTM |
| Plaintiff, | )<br>) | Date: March 7, 2008<br>Time: 9:00 a.m. |
| v. | )<br>) | **STATEMENT OF FACTS AND** |
| **ALEJANDRA TAPIA,** | )<br>) | **MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. | )<br>) | |
| | ) | |

**I.**

**STATEMENT OF FACTS**[1]

      At approximately 3:50p.m. on January 14, 2008 Alejandra Tapia was a passenger in a 1994 Jeep Grand Cherokee driven by Tinamarie Torres DeBenedetto when it approached the San Ysidro Port of Entry. Ms. DeBenedetto told the primary agent that they were going to San Diego, California. She also told the primary agent that the vehicle was a "company vehicle." The primary agent inspected the back rear of the Jeep and found a non-factory compartment with two females concealed inside. Agents handcuffed Ms. DeBendetto and Ms. Tapia and drove the Jeep to secondary inspection where the two females were removed.

---

      [1]    Unless otherwise noted, the facts in this Statement of Facts are derived from government-produced discovery. Ms. Tapia does not concede the accuracy of these facts and reserves the right to contest these facts at future proceedings.

1    Ms. Tapia is charged in a two-count indictment with violations of 8 U.S.C. §1324(a)(2)(B)(ii)

2  and (iii) and 18 U.S.C. § 2.  She has pled not guilty to the charges.

3                                                    **II.**

4              **MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

5    Ms. Tapia moves for the production by the government of the following discovery and for the

6  preservation of evidence.  This request is not limited to those items about which the prosecutor knows, but

7  includes all discovery listed below that is in the custody, control, care, or knowledge of any government

8  agency.  See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir.

9  1989).

10     1. The Defendant's Statements.  The government must disclose to Ms. Tapia *all* copies of any

11  written or recorded statements made by Ms. Tapia; the substance of any statements made by Ms. Tapia that

12  the government intends to offer in evidence at trial; any response by Ms. Tapia to interrogation; the substance

13  of any oral statements that the government intends to introduce at trial and any written summaries of Ms.

14  Tapia's oral statements contained in the handwritten notes of the government agent; any response to any

15  Miranda warnings that may have been given to Ms. Tapia; and any other statements by Ms. Tapia.  Fed. R.

16  Crim. P. 16(a)(1)(A) and (B).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make

17  clear that the government must reveal *all* Ms. Tapia's statements, whether oral or written, regardless of

18  whether the government intends to make any use of those statements.

19     2. Arrest Reports, Notes and Dispatch Tapes.  Ms. Tapia also specifically requests that all

20  arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or

21  any questioning, if such reports have not already been produced *in their entirety*, be turned over to her.  This

22  request includes, but is not limited to, any **rough notes**, records, reports, transcripts or other documents in

23  which statements of Ms. Tapia or any other discoverable material is contained.  Ms. Tapia includes in this

24  request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case

25  agent or any other agent has written.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and

26  Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968).  Arrest

27  reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution

28

1   reports pertaining to Ms. Tapia are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2

2   and 12(I).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

3          3. Brady Material.  Ms. Tapia requests all documents, statements, agents' reports, and tangible

4   evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case.

5   Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the

6   accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

7          4.  Any Information That May Result in a Lower Sentence.  As discussed above, any

8   information that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S.

9   83.  The government must disclose any cooperation or attempted cooperation by Ms. Tapia, as well as any

10  information that could affect any base offense level or specific offense characteristic under Chapter Two of

11  the United States Sentencing Commission Guidelines Manual ("Guidelines").  Also included in this request

12  is any information relevant to a Chapter Three adjustment, a determination of Ms. Tapia's criminal history,

13  or any other application of the Guidelines.

14         5.  The Defendant's Prior Record.  Evidence of a prior record is available under Fed. R. Crim.

15  P. 16(a)(1)(D).  Ms. Tapia specifically requests a complete copy of any criminal record.

16         6.  Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable under Fed.

17  R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon

18  request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

19  general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.

20  Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of

21  consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830

22  (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480,

23  1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

24         This includes any "TECS" records (records of prior border crossings) that the government

25  intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal.  Although there is nothing

26  intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other

27  acts" evidence that the government must produce before trial.  United States v. Vega, 188 F.3d 1150, 1154-

28

1155 (9th Cir. 1999).  Ms. Tapia requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7.  <u>Evidence Seized</u>.  Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8.  <u>Request for Preservation of Evidence</u>.  The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved.  This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, all narcotics, the results of any fingerprint analysis, the vehicle involved in the case, Ms. Tapia's personal effects, and any evidence seized from Ms. Tapia or any third party.  This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9.  <u>Henthorn Material</u>.  Ms. Tapia requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended.  Ms. Tapia further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial.  If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10.  <u>Tangible Objects</u>.  Ms. Tapia requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Ms. Tapia.  Fed. R. Crim. P. 16(a)(1)(E).  Specifically, Ms. Tapia requests **color copies** of all photographs in the government's possession of the alleged narcotics and the vehicle in which the narcotics were found.  If the prosecutor does not wish to make these copies, Ms. Tapia requests the opportunity to do so herself.

11.  <u>Expert Witnesses</u>.  Ms. Tapia requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G).  This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s).  <u>See</u> <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects).  This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Ms. Tapia or any other witness.

Ms. Tapia requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert.  <u>See</u> <u>Kumho v. Carmichael Tire Co.</u>, 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12.  <u>Impeachment evidence</u>.  Ms. Tapia requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Ms. Tapia .  <u>See</u> Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable

1 under Brady, 373 U.S. 83. See United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record);

2 Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

3      13. Evidence of Criminal Investigation of Any Government Witness. Ms. Tapia requests any

4 evidence that any prospective witness is under investigation by federal, state or local authorities for any

5 criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

6      14. Evidence of Bias or Motive to Lie. Ms. Tapia requests any evidence that any prospective

7 government witness is biased or prejudiced against Ms. Tapia, or has a motive to falsify or distort his or his

8 testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); Strifler, 851 F.2d 1197.

9      15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity. Ms.

10 Tapia requests any evidence, including any medical or psychiatric report or evaluation, tending to show that

11 any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any

12 evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

13 Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

14      16. Witness Addresses. Ms. Tapia requests the name and last known address of each

15 prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States

16 v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective);

17 United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Ms.

18 Tapia also requests the name and last known address of every witness to the crime or crimes charged (or any

19 of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. United

20 States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

21      17. Name of Witnesses Favorable to the Defendant. Ms. Tapia requests the name of any

22 witness who made any arguably favorable statement concerning Ms. Tapia or who could not identify him or

23 who was unsure of his identity or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288

24 (5th Cir. 1968); Chavis, 637 F.2d at 223; Jones v. Jago, 575 F.2d 1164,1168 (6th Cir.1978); Hudson v.

25 Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

26      18. Statements Relevant to the Defense. Ms. Tapia requests disclosure of any statement that

27 may be "relevant to any possible defense or contention" that he might assert. United States v. Bailleaux, 685

28 F.2d 1105 (9th Cir. 1982). This includes grand jury transcripts that are relevant to the defense motion to

1  dismiss the indictment.

2      19. <u>Jencks Act Material</u>.  Ms. Tapia requests production in advance of the motion hearing or

3  trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act,

4  18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2.   A verbal acknowledgment that "rough" notes constitute an

5  accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under

6  section 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v.</u>

7  <u>Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an

8  agent reviews notes with the subject of the interview); <u>see also</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-808

9  (9th Cir. 1999).  Advance production will avoid the possibility of delay of the motion hearing or trial to allow

10  Ms. Tapia to investigate the <u>Jencks</u> material.  Ms. Tapia requests pre-trial disclosure of such statements to

11  avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any

12  Jencks statements during cross-examination.

13      20. <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Ms. Tapia

14  requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange

15  for their testimony in this case, and all other information that could arguably be used for the impeachment of

16  any government witnesses.

17      21. <u>Agreements Between the Government and Witnesses</u>.  Ms. Tapia requests discovery

18  regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future

19  compensation, or any other kind of agreement or understanding, including any implicit understanding relating

20  to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and

21  the government (federal, state and/or local).  This request also includes any discussion with a potential witness

22  about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea

23  bargain, even if no bargain was made or the advice not followed.

24      22. <u>Informants and Cooperating Witnesses</u>.  Ms. Tapia requests disclosure of the names and

25  addresses of all informants or cooperating witnesses used or to be used in this case, and in particular,

26  disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime

27  charged against Ms. Tapia.  The government must disclose the informant's identity and location, as well as

28  disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v.</u>

United States, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from informants that exculpates or tends to exculpate Ms. Tapia.

23.  Bias by Informants or Cooperating Witnesses.  Ms. Tapia  requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  Giglio, 405 U.S. 150.  Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24.  Personnel Records of Government Officers Involved in the Arrest.  Ms. Tapia requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Ms. Tapia .  See Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25.  Training of Relevant Law Enforcement Officers.  Ms. Tapia requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding:  (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses.  Ms. Tapia also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover narcotics in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26.  Performance Goals and Policy Awards.  Ms. Tapia requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband.  This request specifically includes information concerning performance goals, policy

1  awards, and the standards used by Customs for commending, demoting, or promoting agents for their

2  performance at the port of entry and their success or failure to detect illegal narcotics in general.

3      27. Opportunity to Weigh, View and Photograph the Contraband. Ms. Tapia hereby requests

4  an opportunity to view, photograph, and weigh the contraband allegedly confiscated in this case. A proposed

5  order is attached.

6      28. DEA 7 Form. Ms. Tapia requests a copy of the DEA 7 form that should indicate the

7  alleged weight and purity of the contraband in this case.

8      29. TECS Reports. Ms. Tapia requests all TECS reports, including reports pertaining to all

9  vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Ms. Tapia.

10 **Any prior border crossings are considered "other acts" evidence that the government must produce**

11 **before trial**. Vega, 188 F.3d at 1154. Ms. Tapia also requests all TECS reports related to her personal border

12 crossings (in this car, on foot, or in another car).

13      30. Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Ms.

14 Tapia requests the reports of all tests and examinations conducted upon the evidence in this case, including,

15 but not limited to, any testing done upon any evidence seized in this case, that is within the possession,

16 custody, or control of the government, the existence of which is known, or by the exercise of due diligence

17 may become known, to the attorney for the government, and that are material to the preparation of the defense

18 or are intended for use by the government as evidence in chief at the trial.

19      31. Narcotics Detector Dog Information. Ms. Tapia moves for production of all discoverable

20 information about any Narcotics Detector Dogs (NDDs) used in this case, including information regarding:

21 (a) the qualifications of the NDDs and their handlers, (b) the training and experience of the NDDs and their

22 handlers, (c) the government's procedures regarding the treatment, training and rewarding of the NDDs, (d) a

23 detailed description of the exact method the NDDs in this case used to indicate an "alert" to contraband, and

24 (e) the location of the NDD and the vehicle when the NDD alerted, and (f) the NDD's reliability.

25      32. Rule 12 Notice. Ms. Tapia hereby invokes her procedural rights pursuant FED. R. CRIM.

26 P. 12(b)(4)(B) and moves for an order to compel notice by the government of its intention to use in its case

27 //

28

1  in chief at trial any evidence which Ms. Tapia may be entitled to discover under Rule 16 of the FED. R. CRIM.

2  PROCEDURE.  This Rule reads:

3  > (4) Notice of the Government's Intent to Use Evidence.

4  > ***

5  > (B) At the Defendant's Request.  At the arraignment or as soon afterward as
> practicable, the defendant may, in order to have an opportunity to move to
> suppress evidence under Rule 12(b)(3) (C), request notice of the government's

6  > intent to use (in its evidence-in-chief at trial) any evidence that the defendant
> may be entitled to discover under Rule 16.

7

8  FED. R. CRIM. P. 12(b)(4)(B).  Rule 12(b)(4)(B) "provides a mechanism for insuring that a defendant knows

9  of the government's intention to use evidence to which the defendant may want to object" so that the

10  defendant may "avoid the necessity of moving to suppress evidence which the government does not intend

11  to use."[2]  FED. R. CRIM. P. 12 advisory committee note to 1974 amendment; see also 1 Charles A. Wright,

12  Federal Practice and Procedure: Criminal § 197, at 735 (2d ed.1982) ( Rule 12(d) "is intended to facilitate the

13  making of a pretrial motion for suppression of evidence."); United States v. Jordan, No. 3:06-CR-102, 2007

14  WL 1849985, at *3 (E.D. Tenn. June 5, 2007) ("Rule 12(b)(4)(B) is intended to facilitate the making of

15  pretrial suppression motions by allowing the defendant to avoid filing a motion to suppress when the

16  government does not intend to use the evidence"); United States v. Anderson, 416 F. Supp. 2d 110, 112 (D.C.

17  Cir. Feb. 23, 2006) (same) (quoting FED. R. CRIM. P. 12 advisory committee note to 1974 amendment).

18  > Thus, Rule 12(d) aids defendants in complying with their Rule 12(b)(3)
> obligation to make motions to suppress evidence prior to trial. This in turn

19  > preserves the integrity of a trial by not interrupting it with suppression motions.
> See FED. R. CRIM. P. 12 advisory committee's note (Rule 12(b)(3) "'is designed

20  > to eliminate from the trial disputes over police conduct not immediately
> relevant to the question of guilt'") (quoting Jones v. United States, 362 U.S.

21  > 257, 264, 80 S. Ct. 725, 732, 4 L. Ed. 2d 697 (1960) (emphasis eliminated)).

22  United States v. de la Cruz-Paulino, 61 F.3d 986, 993-94 (1st Cir. 1995).

23  > The amendments proposed by the Supreme Court and permitted by Congress to take effect

24

---

25  > [2]  Government violations of Rule 12(b)(4)(B) should excuse a defendant's failure to move
to suppress evidence prior to trial, as required by Rule 12(b)(3), because defendants have no

26  > incentive to move to suppress evidence that the government will not be introducing.  See United
States v. Poole, 794 F.2d 462, 464 n. 1 (9th Cir.1986) (excusing the defendant's failure to move

27  > to suppress evidence prior to trial since the government had not warned the defendant that the
evidence would be used); FED. R. CRIM. P. 12(e) ("A party waives any Rule 12(b)(3) defense,

28  > objection, or request not raised by the deadline the court sets under Rule 12(c) or by any
extension the court provides.  For good cause, the court may grant relief from the waiver.").

beginning in 1975 show that compliance with such a defense request is mandatory and does not require any court action: "the government, either on its own or in response to a request by the defendant, *must* notify the defendant of its intent to use certain evidence in order to give the defendant an opportunity before trial to move to suppress that evidence." FED. R. CRIM. P. 12 advisory committee note to 1975 amendment, Notes of the Committee on the Judiciary to 1975 Enactment, Amendments Proposed by the Supreme Court, H.R. Rep. No. 94-247 (emphasis added); see also FED. R. CRIM. P. 12 advisory committee note to 2002 amendment (in explaining renumbering and reorganization of subparts of the Rule, stating that "[t]he Committee believed that [old Rule 12(d)], which addresses the government's *requirement* to disclose discoverable information for the purpose of facilitating timely defense objections and motions, was more appropriately associated with the pretrial motions specified in Rule 12(b)(3).") (emphasis added); United States v. Holmes, No. 07-CR-104, 2007 WL 2900438, at *2 (E.D. Wis. 2007) ("Rule 12(b)(4)(B), like FED. R. EVID. 404(b), entitles the defendant to certain information upon request; no court order or intervention is required"); United States v. Anderson, 416 F.Supp. 2d at 112 (discussing 1975 amendment to FED. R. CRIM. P. 12); United States v. Norman, No. 05-CR-30015-DRH-4, 2005 WL 2739082, at *2 (S.D. Ill. Oct. 24, 2005) ("the government is obligated to comply with both Rule 16 and Rule 12(b)(4)(B)."). The government's "duty to disclose [under Rule 12(b)(4)(B)] is a continuing one, and any 'arguably' suppressible evidence coming into its possession after its initial discovery disclosures must be disclosed as soon as practicable." United States v. Kimble, No. CR 106-156, 2007 WL 1430303, *2 (S.D. Ga. May 10, 2007).

"The notice required by the language of the rule is notice of what, if any, of the Rule 16 evidence that a defendant is entitled to receive will be used at trial; evidence that is not subject to Rule 16 disclosure, is not subject to the notice requirement of Rule 12(b)(4)(B)." United States v. Cheatham, 500 F. Supp. 2d 528, 534 (W.D. Pa. 2007) (citing United States v. Fischbach and Moore, Inc., 576 F.Supp. 1384, 1396-1397 (W.D. Pa. 1983) (discussing Federal Rule of Criminal Procedure 12(d)(2), now Federal Rule of Criminal Procedure 12(b)(4)(B)).

> It is clear that what the government is required to disclose early on in the pendency of the case is evidence gathered from searches and seizures including electronic monitoring, and statements and confessions, all of which may be subject to suppression upon motion by Defendant. In essence the Rule requires the government to make early disclosure of these matters to allow the Court to determine any suppression motions prior to trial thereby avoiding needless delay during trial.

1  Kimble, 2007 WL 1430303, at *2. It should also be noted that when the government has an open file policy

2  with regard to its prosecution, this policy does not comply with Rule 12(b)(4)(B) "because it does not specify

3  which evidence the government intends to use at trial." Cruz-Paulino, 61 F.3d at 993 (citing United States

4  v. Brock, 863 F. Supp. 851, 868 (E.D. Wis. 1994); Anderson, 416 F. Supp. 2d at 112, n. 1 ("Simply complying

5  with an open file policy is insufficient to satisfy Rule 12(b)(4)(B) because merely making discovery available

6  for inspection does not inform a defendant upon what evidence the government intends to rely") (citing Brock,

7  863 F. Supp. at 868; United States v. Kelley, 120 F.R.D. 103, 107 (E.D. Wis.1988)). In Cruz-Paulino, the

8  First Circuit explained:

> "To the extent that the government's open files contain information that is subject to Rule 16 discovery, Rule 12(d)(2) creates a notice requirement. The open file policy does not, in and of itself, satisfy this notice requirement because it does not specify which evidence the government intends to use at trial." Providing open-file discovery does not satisfy Rule 12(d)(2) because "the defendant is still 'left in the dark' as to exactly what evidence, discoverable under Rule 16, the government intends to rely upon in its case in chief at trial."

61 F.3d at 993 (citations omitted). The district court in Anderson similarly explained:

> Defendant's entitlement under Rule 12(b)(4)(B), then, is clear: of the material seized from [the defendant], the government must notify defendant of the evidence that it intends to use in its case-in-chief-that is, the evidence that will appear on the government's exhibit list for trial.

17  Anderson, 416 F. Supp. 2d at 112. Thus, mere disclosure of discovery to the defense pursuant to Rule 16 is

18  insufficient notice pursuant to Rule 12(b)(4)(B) of what the government intends to use in its case in chief at

19  trial.[3]

20       Accordingly, Ms. Tapia requests that any evidence or information that falls within Rule

21  12(b)(4)(B) be specifically identified from among the items of other discovery that will be produced, or have

22  already been produced, pursuant to Rule 16. It is not the intent or purpose of Rule 12(b)(4)(B) that the

23  government simply reply that its Rule 12(b)(4)(B) evidence is contained "somewhere" within the mass of

24  discovery items provided under Rule 16. Specific identification of Rule 12(b)(4)(B) evidence is essential to

---

[3] Also, although Rule 12(b)(4)(B) speaks only of evidence that the government intends to use in its case-in-chief, federal courts have the inherent authority to require the government to give notice of such evidence that the government intends to use in rebuttal or otherwise. See United States v. Richter, 488 F.2d 170, 173-74 (9th Cir. 1973). Such notice is required to "protect[] the trial from error and enable[] the defense at the most appropriate time to obtain a ruling on the usability by the prosecution of important evidence." Battle v. United States, 345 F.2d 438, 440 (D.C. Cir. 1965).

enable counsel to prepare effectively, to conserve judicial time and resources, and if appropriate, to afford an opportunity to move to suppress.

Ms. Tapia also asks the Court to require the government to file a Rule 12(b)(4)(B) notice and exhibit list within seven (7) days and that the defendant be permitted an extension of the motions deadline to file motions to exclude the proffered evidence from admission at trial.[4]

33.  Residual Request.  Ms. Tapia intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.

Ms. Tapia requests that the government provide her and her attorney with the above requested material at least three weeks before trial.

## III.

## MOTION TO PRESERVE AND INSPECT EVIDENCE

Ms. Tapia requests that this Court issue an order for the U.S. Government and its agents to preserve the vehicle in this case and to permit the defense attorney and his agents to inspect and photograph it.  Ms. Tapia also requests the opportunity to view and photograph all physical evidence seized, including personal effects, items found in the car, and any cell phones or other evidence from the arrest.  For the Court's convenience, a proposed order is attached at the end of these motions.

## IV.

## MOTION TO SUPPRESS STATEMENTS

Ms. Tapia moves to suppress any and all statements made at the time of her arrest on the grounds that they were not made knowingly, intelligently, and voluntarily.  Moreover, Ms. Tapia moves to suppress any other statements on the grounds that those statements were not made voluntarily.

**A.**        **Introduction.**

The government bears the burden of demonstrating that a defendant's statement is voluntary

---

[4]  The Court has significant latitude in fashioning the mechanism by which such disclosure must occur.  According to the advisory committee notes to the 1974 amendment to Rule 12, "[n]o sanction is provided for the government's failure to comply with the court's order because the committee believes that attorneys for the government will in fact comply and that *judges have ways of insuring compliance*."  Fed.R.Crim.P. 12, advisory committee notes to 1974 amendment (emphasis added).

1    and that Miranda warnings were given prior to a custodial interrogation.  United States v. Harrison, 34 F.3d

2    886, 890 (9th Cir. 1994); see also United States v. Dickerson, 530 U.S. 428, 439-41 (2000) (discussing

3    constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436, 444 (1966) and the need to safeguard

4    "precious Fifth Amendment rights"); see also 18 U.S.C. § 3501.  Unless and until the government meets this

5    high burden in this case, Mr. Tapia's statements must be suppressed.

6    **B.   The Government Must Demonstrate Compliance with *Miranda* in This Case.**

7             **1.   *Miranda* Warnings Must Precede Custodial Interrogation.**

8             The prosecution may not use statements, whether exculpatory or inculpatory, stemming from

9    a custodial interrogation of Ms. Tapia unless it demonstrates the use of procedural safeguards effective to

10   secure the privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966)[5].  Custodial

11   interrogation is questioning initiated by law enforcement officers after a person has been taken into custody

12   or otherwise deprived of his freedom of action in any significant way.  Id.  See Orozco v. Texas, 394 U.S. 324,

13   327 (1969).

14            Once a person is in custody, Miranda warnings must be given prior to any interrogation.  See

15   United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).  Those warnings must advise the

16   defendant of each of his or her "critical" rights.  United States v. Bland, 908 F.2d 471, 474 (9th Cir.1990).

17   In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively

18   misleading.  United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir. 2003).  The warning must be clear

19   and not susceptible to equivocation.  Id. (vacating illegal entry conviction where defendant was advised of

20   his administrative rights from an I-826 form and later advised of his Miranda rights).  If a defendant indicates

21   that he wishes to remain silent or requests counsel, the interrogation must cease.  Miranda, 384 U.S. at 474;

22   see also Edwards v. Arizona, 451 U.S. 484 (1981).  Unless and until the government shows that the agents

23   properly administered the Miranda warnings, the government cannot use evidence obtained as a result of any

24   custodial interrogation that occurred after Ms. Tapia's arrest.  Miranda, 384 U.S. at 479.

25   //

26   //

27

28            [5] In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court
     held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension.
     Id. at 2336 ("we conclude that Miranda announced a constitutional rule").

1    **2.  The Government Must Demonstrate That Any Alleged Waiver of Ms. Tapia's**
        **Rights Was Voluntary, Knowing, and Intelligent.**

2

3          When interrogation occurs without the presence of an attorney and a statement is taken, a heavy

4    burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived her

5    privilege against self-incrimination and her right to retained or appointed counsel. Miranda, 384 U.S. at 475.

6    It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be

7    made knowingly, intelligently, and voluntarily.  Schneckloth, 412 U.S. 218.  To satisfy this burden, the

8    prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the

9    defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to

10   abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S.

11   412, 421 (1986)).  The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143

12   F.3d at 536.  The standard of proof for a waiver of these constitutional rights is high.  Miranda, 384 U.S. at

13   475.  See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great,

14   the court must indulge every reasonable presumption against waiver of fundamental constitutional rights).

15   Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v.

16   United States, 530 U.S. 428, 438 (2000), no law or local court rule relieves the government of its burden to

17   prove that Ms. Tapia voluntarily waived the Miranda protections.  Miranda, 384 U.S. 475.

18          The validity of the waiver depends upon the particular facts and circumstances surrounding

19   the case, including the background, experience, and conduct of the accused.  Edwards v. Arizona, 451 U.S.

20   477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983).  See also United States v. Heldt, 745 F.2d at

21   1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981).  In Derrick v. Peterson, 924 F.2d 813

22   (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two

23   prong analysis:  the waiver must be both (1) voluntary, and (2) knowing and intelligent.  Id. at 820.

24          The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the

25   [Fifth] Amendment . . .."  Id.  The second prong, requiring that the waiver be "knowing and intelligent,"

26   mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right

27   being abandoned and the consequences of the decision to abandon it."  Id. at 820-21 (quoting Colorado v.

28   Spring, 479 U.S. 564, 573 (1987)).  This inquiry requires that the Court determine whether "the requisite level

1  of comprehension" existed before the purported waiver may be upheld. Id. Thus, "[o]nly if the 'totality of

2  the circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of

3  comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting

4  Colorado v. Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

5          The government bears the burden of demonstrating a meaningful Miranda waiver by a

6  preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Moreover, this Court must

7  "indulge every reasonable presumption against waiver of fundamental constitutional rights." Schell v. Witek,

8  218 F.3d 1017, 1024 (9th Cir. 2000) (*en banc*) (citations omitted). Unless and until the prosecution meets

9  its burden of demonstrating through evidence that adequate Miranda warnings were given and that Ms. Tapia

10  knowingly and intelligently waived her rights, Ms. Tapia's statements must be suppressed. Miranda, 384 U.S.

11  at 479.

12  **C. The Government Bears the Burden of Proving Ms. Tapia's Statements Were Made Voluntarily.**

13          A defendant in a criminal case is deprived of due process of law if the conviction is founded

14  upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S.

15  368, 387 (1964). This is so even when the procedural safeguards of Miranda have been satisfied. Id. The

16  government bears the burden of proving by a preponderance of the evidence that a confession is voluntary.

17  Lego v. Twomey, 404 U.S. 477, 483 (1972).

18          In order to be voluntary, a statement must be the product of a rational intellect and free will.

19  Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne

20  in a particular case, the totality of the circumstances must be considered. Schneckloth, 412 U.S. at 226. Some

21  factors taken into account have included the youth of the accused, his lack of education, his low intelligence,

22  the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and

23  prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or

24  sleep. Id.

25          A confession is deemed involuntary whether coerced by physical intimidation or psychological

26  pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). "The test is whether the confession was extracted

27  by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by

28  the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States,

1  168 U.S. 532, 542-43 (1897)).  See also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).  Until

2  the government meets its burden of showing all statements of Ms. Tapia that it intends to use at trial were

3  voluntary, his statements must be suppressed as involuntary.  18 U.S.C. § 3501(a).

4  **D.  This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of Ms. Tapia's**
   **Statements.**

5

6  This Court must make a factual determination as to whether a confession was voluntarily given

7  prior to its admission into evidence.  18 U.S.C. § 3501(a).  Where a factual determination is required, courts

8  are obligated by Federal Rule of Criminal Procedure 12 to make factual findings.  See United States v. Prieto-

9  Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial

10  itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported

11  by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive

12  pleading.  Under section 3501(b), this Court must consider "all the circumstances surrounding the giving of

13  the confession," including:

14  (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made
   after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he

15  was charged or of which he was suspected at the time of making the confession, (3) whether or not such
   defendant was advised or knew that he was not required to make any statement and that any such statement

16  could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right
   to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when

17  questioned and when giving such confession.

18  18 U.S.C. § 3501(b) ("section 3501(b)").

19  Without the presentation of evidence, this Court cannot adequately consider these statutorily

20  mandated factors and other important factors bearing on voluntariness.  Accordingly, Ms. Tapia requests that

21  this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence

22  of the jury, whether any statements made by Ms. Tapia were voluntary.

23  **V.**

24  ***APPRENDI V. NEW JERSEY* AND *BLAKELY V. WASHINGTON* REQUIRE THAT THIS COURT**
   **DISMISS THE INDICTMENT BECAUSE 21 U.S.C. §§ 952 AND 960 ARE**

25  **UNCONSTITUTIONAL**

26  Simply stated, Ms. Tapia's Apprendi and Blakely challenge to 21 U.S.C. §§ 952 and 960 is that

27  Congress plainly intended the facts that determine the maximum sentence, drug type and quantity, to be

28  sentencing factors, not elements.  See, e.g., United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001)

1   (en banc).  Because that allocation conflicts with the requirements of the Fifth and Sixth Amendments as set

2   forth in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 124 S. Ct. 2531 (2004),

3   the statutes are unconstitutional.  Moreover, because courts cannot disturb Congress's choice of fact-finder,

4   see United States v. Jackson, 390 U.S. 570, 576 (1968) (courts cannot "return to the [jury] the ultimate duty

5   that Congress deliberately placed in other hands"), the statute cannot be saved.

6       In United States v. Buckland, 289 F.3d 558 (9th Cir. 2002) (en banc) (holding 21 U.S.C. §841

7   constitutional), and United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002) (holding 21 U.S.C. §960

8   constitutional), the Ninth Circuit Court of Appeals (the "Court") rejected this constitutional challenge by

9   concluding that §§841 and 960 are sufficiently ambiguous to permit application of the doctrine of

10  constitutional doubt.[6]  See Buckland, 289 F.3d at 564-68; Mendoza-Paz, 286 F.3d at 1109-10.  However, the

11  Supreme Court's subsequent opinion in United States v. Harris, 122 S. Ct. 2406 (2002), indicates that the

12  Court's opinions in both Buckland and Mendoza-Paz were wrongly analyzed and decided.  "It is already well

13  established that where a Supreme Court decision has effectively undermined prior Ninth Circuit precedent,

14  [this Court is] free to reexamine those earlier cases to determine their continuing validity."  United States v.

15  Maybusher, 735 F.2d 366, 371 n.1 (9th Cir. 1984) (9th Cir. 1984) (citation and quotation omitted).

16      To begin, the Buckland panel relied solely on its view that § 841 did not explicitly state that judges

17  were to determine drug type and quantity by a preponderance of the evidence.  See Buckland, 289 F.3d at 565

18  ("[s]ection 841 is most striking for what it does not say"); accord Mendoza-Paz, 286 F.3d at 1110; but see

19  Harris, 122 S. Ct. at 2411 ("[t]he statute does not say in so many words whether brandishing is an element

20  or a sentencing factor, but the structure of the prohibition suggests it is the latter").  Accordingly, in an effort

21  to save the statutes, the Court felt free to backtrack on countless decisions holding that Congress clearly

22  intended drug type and quantity to be sentencing factors decided by a trial judge.  See, e.g., United States v.

23  Lopez-Martinez, 725 F.2d 471, 475 (9th Cir. 1984) ("Under the statute, the violation is importing or

24  possessing a controlled substance.  The difference between narcotic and non-narcotic controlled substances

25  is material only as to the applicable penalty") (emphasis added); accord United States v. Johnson, 130 F.3d

26  1420, 1428 (10th Cir. 1997) (affirming jury instruction that said only "controlled substance"); United States

27

28      [6]    By nonetheless raising this challenge here, Ms. Tapia asks this Court to decline to
    follow Ninth Circuit precedent so clearly in conflict with binding precedent of the Supreme
    Court.  Furthermore, Ms. Tapia specifically preserves this issue for future review.

v. Lucien, 61 F.3d 366, 373 (5th Cir. 1995) ("The identity of the controlled substance as cocaine base is not an element of the offense proscribed in the first sentence of section 844(a); nor is it an element of the distribution offense denounced in section 841(a)(1)"); United States v. Williams, 876 F.2d 1521, 1251 (11th Cir. 1989) ("The nature and quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense").

The Buckland panel found support for its view that the lack of an explicit statement as to burden of proof and allocation between judge and jury was "dispositive," id. at 565, in United States v. Brough, 243 F.3d 1078 (7th Cir. 2001), and United States v. Cernobyl, 255 F.3d 1215 (10th Cir. 2001). The panels in Brough and Cernobyl, like the Buckland panels itself, perform no statutory analysis beyond observing that §841 does not explicitly allocate the issues of type and quantity to the judge to determine by a preponderance of the evidence.[7] See Brough, 243 F.3d at 1079; Cernobyl, 255 F.3d at 1219. Relying on these cases, the Court in Buckland concluded "the emphasis on the statutory divide between 'elements' in §841(a) and 'penalties' in § 841(b) is . . . unavailing." 289 F.3d at 565.

In Harris, the Supreme Court rejects Buckland's approach, noting, at the outset, that application of traditional canons of statutory construction to determine whether Congress intended facts to be elements or sentencing factors is the "threshold question." Harris, 122 S. Ct. at 2411. Therefore, contrary to the view expressed in Buckland that "[t]he days of semantical hair splitting between 'elements of the offense' and 'sentencing factors' . . . are over," Buckland, 289 F.3d at 566, the Supreme Court reaffirmed the viability of the statutory construction approach that it has followed since 1998. See Harris, 122 S. Ct. 2406; accord Carter v. United States, 530 U.S. 255, 273 (2000); Castillo v. United States, 530 U.S. 120, 123 (2000); Jones v. United States, 526 U.S. 227 (1999); Almendarez-Torres, 523 U.S. at 238. The type of statutory analysis undertaken in Harris, as well as in Castillo, Jones and Almendarez-Torres, makes clear that Congress intended drug type and quantity to be sentencing factors. See, e.g., United States v. Promise, 255 F.3d 150, 170-77 (4th Cir. 2001) (Luttig, J., concurring) (analyzing section 841 and collecting cases). Post-Apprendi, the Court has not performed that analysis, however, because of Buckland's erroneous view that its "day" had come and gone. As the Court's pre-Apprendi precedent makes clear, that analysis compels concluding that Congress

---

[7]     This approach misapplies constitutional doubt analysis, which takes place "after, and not before, [a statute's] complexities are unraveled." Almendarez-Torres v. United States, 523 U.S. 224, 238 (1998).

1  intended drug type and quantity to be sentencing factors.[8]

2          Perhaps most tellingly, Harris specifically rejects the notion that underlies Buckland, as well as

3  Brough and Cernobyl, that pre-Apprendi statutory interpretation cases have been "stripped" of "precedential

4  value" by "Apprendi's reading of the Due Process Clause." Buckland, 289 F.3d at 567; but see Sanchez, 269

5  F.3d at 1268 (observing that "[f]undamentally, Apprendi did not announce any new principles of statutory

6  construction," and holding that "'Congress decided that the elements of a §841 offense do not include the

7  weight of the drugs'"); Buckland, 289 F.3d at 586 (Tashima, J., dissenting) (same). Harris teaches that the

8  canon of constitutional doubt does not "embrace a dynamic view of statutory interpretation, under which the

9  text might mean one thing when enacted yet another if the prevailing view of the Constitution changed." 122

10  S. Ct. at 2413. But that is precisely what Buckland, Brough and Cernobyl do: each of those decisions rejects,

11  without explanation, the pre-Apprendi statutory interpretation of section 841. See, e.g., United States v.

12  Nordby, 225 F.3d 1053, 1058 (9th Cir. 2000) ("existing precedent in this circuit plainly states that Congress

13  did not intend drug quantity to be an element of the crime under 21 U.S.C. §§841 and 846") (citations

14  omitted); United States v. Jackson, 207 F.3d 910, 920 (7th Cir.), vacated, 121 S. Ct. 376 (2000), judgment

15  reinstated, 236 F.3d 886 (7th Cir. 2001) ("[i]t is apparent that Congress intended the type and quantity of the

16  drugs distributed by a defendant convicted under section 841(a) to be determined at sentencing"); United

17  States v. Jones, 194 F.3d 1178, 1185-86 (1999), vacated, 530 U.S. 1271 (2000), rev'd, 235 F.3d 1231, 1236

18  (10th Cir. 2000) ("Because Congressional intent is evident from the plain language of the statute, the doctrine

19  of constitutional doubt, and in particular the constitutional doubt articulated in Jones, [526 U.S. 227,] does

20  not apply"); see also United States v. Grimaldo, 214 F.3d 967, 972 (8th Cir. 2000) ("[t]he structure and plain

21  language of [section 841] leave no doubt that drug quantity is a sentencing factor").[9] Thus, Buckland, like

22  Brough and Cernobyl, simply adopted a new "meaning" of section 841 because "the prevailing view of the

23  Constitution changed." Harris, 122 S. Ct. at 2413. Harris precludes this approach. Id.

24   

---

25         [8]    In fact, in Buckland the government conceded that Congress intended drug type

26  and quantity to be sentencing factors and that the statute was not subject to a contrary interpretation. Buckland, 289 F.3d at 564; accord id. at 586 (Tashima, J., dissenting).

27         [9]    Although the Buckland majority insists that it was "the judiciary, not Congress,

28  which allocated the responsibility for determining drug quantity under §841 to the courts," 289 F.3d at 567, Jackson, Jones, and Grimaldo make clear that it was Congressional intent, not judicial fiat, that dictated that allocation.

1  In short, the approach taken in Buckland and Mendoza-Paz has been thoroughly repudiated by Harris.

2  The Ninth Circuit must now assess the constitutionality of 21 U.S.C. §§841, 952, and 960 under Apprendi

3  in light of the statutory construction set forth by the Supreme Court in Harris, Carter, Castillo, Jones and

4  Almendarez-Torrez.  As the Court's pre-Apprendi cases show, an honest assessment reveals that these statutes

5  are facially unconstitutional.

6  **VI.**

7  **IF THIS COURT UPHOLDS THE CONSTITUTIONALITY OF THE STATUTE, THE**
   **INDICTMENT MUST NEVERTHELESS BE DISMISSED BECAUSE THE GRAND JURY WAS**
8  **NOT ASKED TO FIND THAT MS. Tapia _KNEW_ THE TYPE AND QUANTITY OF NARCOTIC**
   **THAT WAS INVOLVED IN THIS OFFENSE**

9

10  If this Court reinterprets the type and quantity of controlled substance to be offense elements or the

11  "functional equivalent" of offense elements that have to be alleged in the indictment, this Court must find that

12  the statute's _mens rea_ is equally applicable to these new "elements."  See United States v. X-Citement Video,

13  Inc., 513 U.S. 64 (1994); but see United States v. Carranza, 289 F.3d 634 (9th Cir. 2002).  Not only must the

14  indictment allege the type and quantity of "controlled substance" involved in the offense, the indictment must

15  allege that the defendant knew the type and quantity involved.  And, regardless of what this Court considers

16  the elements of his alleged offense, Mr. has a right to a Grand Jury determination on each one.  See United

17  States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) ("The Fifth Amendment ... requires that a defendant be

18  convicted only on charges considered and found by a grand jury."); see also id. (reversing because the Ninth

19  Circuit could "only guess whether the grand jury received evidence of, and actually passed on, Du Bo's

20  intent.") (emphasis added).  Thus, assuming that this Court upholds the constitutionality of section 841, the

21  grand jury should have found that  Ms. Tapia knew that approximately 40.36 kilograms of marijuana were

22  involved in this offense.  Because the grand jury made no such finding, this Court should dismiss the

23  indictment.

24  **VII.**

25  **THIS COURT SHOULD DISMISS THE INDICTMENT DUE TO A GRAND JURY VIOLATION**
   **BECAUSE THE GRAND JURY WAS NOT CHARGED PROPERLY**

26

27  The Ninth Circuit and the Supreme Court have recently rejected several challenges to the instructions

28  given to grand jurors in the Southern District of California.  See United States v. Navarro-Vargas, 408 F.3d

1184 (9th Cir. 2005) (en banc), <u>cert</u> <u>denied</u> 126 S.Ct. 736 (2005). <u>See</u> Ex. A (2006 grand jury charge). However, it remains outstanding whether the indictment must be dismissed in a case such as this one where the grand jurors are told that they cannot consider penalty information. <u>See</u> Ex. A at 5-6 (grand jury charge). Well-settled principles regarding the constitutional function of the grand jury make clear that it must.

The instructions forbidding the grand jurors from considering the potential punishments associated with the offenses they are considering run afoul of <u>Vasquez v. Hillery</u>, 474 U.S. 254 (1986). These instructions cannot be reconciled with <u>Vasquez</u>'s recognition that the grand jury has "the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense[,] all on the basis of the same facts." <u>Vasquez</u>, 474 U.S. at 263. Moreover, punishment information is certainly germane to any assessment of "the need to indict." <u>Id.</u> at 264.

As Judge Hawkins put it, "[i]f grand jurors can choose, per <u>Vasquez</u>, between capital and non-capital offenses, how could they not be influencing the determination of punishment?" <u>Navarro-Vargas</u>, 408 F.3d at 1214 (Hawkins, J., dissenting). <u>Accord</u> <u>Navarro-Vargas</u>, 367 F.3d at 899 (Kozinski, J., dissenting). The instructions here "seek to eradicate this important function." <u>Id.</u> The approval of these instructions conflicts with <u>Vasquez</u>. Because the en banc majority in <u>Navarro-Vargas</u> did not address this challenge, this is an open question.

Moreover, the erroneous instruction is an unlawful exercise of supervisory power over the grand jury. <u>See generally</u> <u>United States v. Williams</u>, 504 U.S. 36 (1992). In evaluating whether a court could order prosecutors to disclose exculpatory evidence to grand jurors as an exercise of supervisory power, the Supreme Court held that "as a general matter at least, no such 'supervisory' judicial authority exists." <u>Williams</u>, 504 U.S. at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" <u>id.</u> at 46 (quoting <u>United States v. Mechanik</u>, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." <u>Id.</u> at 47 (emphasis added). It follows, then, that if courts cannot prescribe standards for the conduct of prosecutors, courts have even less authority to prescribe rules purporting to cabin

1   the subject matter of the inquiries and deliberations of grand jurors.  See id. at 48 ("[t]he grand jury [is]

2   functional[ly] independen[t] from the Judicial Branch").

3        The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of

4   grand jury procedure."  Id. at 50.  In exercising that "very limited" power" courts cannot "reshap[e] ... the

5   grand jury institution, [and] substantially alter[] the traditional relationships between the prosecutor, the

6   constituting court, and the grand jury itself."  Id.  That is precisely what the instructions here do.  See Navarro-

7   Vargas, 367 F.3d at 899 (Kozinski, J., dissenting).

8        The "judicial reshaping" of the grand jury's role is made manifest by the conflicts between the

9   instructions and the Supreme Court's explication of the grand jury's role in Vasquez.  By forbidding the grand

10  jurors from considering the desirability of a particular penalty, i.e., preventing them from fulfilling the role

11  described in Vasquez, the district court prevented the grand jury from performing its traditional function.  The

12  instruction effects "judicial reshaping of the grand jury institution, [which] substantially alter[ed] the

13  traditional relationships between the prosecutor, the constituting court, and the grand jury itself," Williams,

14  504 U.S. at 50, by instructing the grand jurors that they could not consider penalty information, even though

15  those grand jurors possess "power to charge a greater offense or a lesser offense; numerous counts or a single

16  count; and perhaps most significant of all, a capital offense or a non-capital offense."  Vasquez, 474 U.S. at

17  263.  The instructions' "judicial reshaping" of the grand jury is forbidden by Williams.

## VIII.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

20       Defense counsel for Ms. Tapia has received 96 pages of discovery and two DVDs.  Defense counsel

21  has not yet had an opportunity to inspect the vehicle and compartment and Ms. Tapia's personal effects.

22  Ms. Tapia does not yet have a complete English transcription of her interrogation by agents.  Ms. Tapia

23  respectfully requests leave to file further motions based on information obtained through the discovery

24  process.

25  //

26  //

27  //

28  //

## IX.

### <u>CONCLUSION</u>

For the foregoing reasons, Ms. Tapia respectfully requests that the Court grant the above motions.

Respectfully submitted,

*/s/ Stephen D. Demik*

Dated:  February 22, 2008

**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Tapia