1  **STEPHEN D. DEMIK**
   California State Bar No. 221167
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5030
   (619) 234-8467/Fax: (619) 687-2666
4  Stephe_Demik@fd.org

5  Attorneys for Ms. Tapia

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10                       **(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| 11  UNITED STATES OF AMERICA,             ) | Case No. 08CR0249-BTM |
|           )           Plaintiff,                          ) | DATE:   March 5, 2008 |
|           )                                               ) | TIME:   9:00 a.m. |
| 13  v.                                                    ) | |
|           )                                               ) | **DEFENDANT'S RESPONSE AND** |
| 14  ALEJANDRA TAPIA (2),                                  ) | **OPPOSITION TO MATERIAL WITNESS'** |
|           )                                               ) | **MOTION FOR VIDEOTAPED DEPOSITIONS** |
| 15           Defendant.                                   ) | |

## I.

## STATEMENT OF FACTS[1]

At approximately 3:50p.m. on January 14, 2008 Alejandra Tapia was a passenger in a 1994 Jeep Grand Cherokee driven by Tinamarie Torres DeBenedetto when it approached the San Ysidro Port of Entry. Ms. DeBenedetto told the primary agent that they were going to San Diego, California. She also told the primary agent that the vehicle was a "company vehicle." The primary agent inspected the back rear of the Jeep and found a non-factory compartment with two females concealed inside. Agents handcuffed Ms. DeBendetto and Ms. Tapia and drove the Jeep to secondary inspection where the two females were removed.

---

[1] The following statement of facts and facts further cited in this motion are based primarily on government-provided discovery. Ms. Solorio in no way admits the truth of these facts nor their accuracy as cited in these motions. Further, Ms. Solorio reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

Ms. Tapia is charged in a two-count indictment with violations of 8 U.S.C. §1324(a)(2)(B)(ii) and (iii) and 18 U.S.C. § 2. She has pled not guilty to the charges.

On February 1, 2008, Alan Ferguson, Esq., the attorney for Ms. Bocanegra-Narvaez, filed a motion for a videotaped deposition pursuant to 18 U.S.C. § 3144, alleging that she has no prospects for a surety.

## II.

**THE MOTION FOR THE MATERIAL WITNESS' DEPOSITION SHOULD BE DENIED BECAUSE THERE IS NO SHOWING OF UNAVAILABILITY OF THE WITNESS AND THE MOTION IS MADE PREMATURELY**

Title 18, United States Code § 3144 governs the detention of individuals who may give testimony material to a criminal proceeding. This section provides that where the witness is not able to meet the conditions of the bond set by the court and is detained, the court may order the deposition of the witness where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witness has moved for videotaped depositions pursuant to 18 U.S.C. § 3144. Although a deposition may secure the material witness' testimony, this Court should order the material witness' continued detention in order to protect Ms. Tapia's constitutional rights. In the alternative, this Court should modify the conditions of release so that the material witness can remain in the United States until this case is resolved.

Depositions in criminal cases are generally disfavored for several reasons, including the threat to the defendant's Sixth Amendment confrontation rights. United States v. Drogoul, 1 F.3d 1546, 1551-52 (11th Cir. 1993). All defendants have the right to confront witnesses against them. See U.S. CONST. Amend. VI. The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), reaffirmed this principle — developed at common law and incorporated into the Confrontation Clause of the Sixth Amendment by the Framers — that testimonial statements may not be admitted against a defendant where the defendant has not had the opportunity to cross-examine the declarant. This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 60.

In Crawford, the Supreme Court noted that the Sixth Amendment was drafted in order to protect against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against

1  the accused." Id. at 50. Such *ex parte* examinations implicate Sixth Amendment concerns because they are
2  "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to "witnesses
3  against the accused - in other words, those who bear testimony." Id. at 51 (internal quotations omitted).
4  Although the Supreme Court declined to define "testimonial" evidence, they noted that an "accuser who
5  makes a formal statement to government officers bears testimony in a sense that a person who makes a casual
6  remark to an acquaintance does not." Id. The Confrontation Clause does not permit such testimonial
7  statements to be admitted at trial against an accused without the constitutionally prescribed method of
8  determining reliability, *i.e.*, confrontation. Id. at 61-65. In other words, "[w]here testimonial evidence is at
9  issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for
10 cross-examination." Id. at 68.

11        Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no
12 opportunity to confront the witness, there are some situations in which depositions may nonetheless be taken.
13 In these situations, the burden is on the moving party to establish *exceptional circumstances* justifying the
14 taking of depositions. Drogoul, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo, 929 F.2d 1507,
15 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of certain "critical
16 factors," such as whether (1) the witness is unavailable to testify at trial; (2) injustice will result because
17 testimony material to the nonmoving party's case will be absent; and (3) countervailing factors render taking
18 the deposition unjust to the nonmoving party. Id. at 1552.

19        When considering this issue, this Court must balance the interests of the government and the accused,
20 as well as the interests of the material witness. Although the material witness may have a liberty interest at
21 stake, that interest is outweighed by Ms. Tapia's weighty constitutional rights of confrontation and due
22 process of law. The Confrontation Clause serves several purposes: "(1) ensuring that witnesses will testify
23 under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the
24 demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985). It allows the accused
25 to test the recollection and the conscience of a witness through cross-examination and allows the jury to
26 observe the process of cross-examination and make an assessment of the witness' credibility. Maryland v.
27 Craig, 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64 (1980). In a case such as the one,
28 where the material witness has received the benefit of the Government refraining from pressing criminal

1 charges in return for her testimony against the accused,[2] it is important that the jury see the reaction and
2 demeanor of the material witness when she is confronted with questions that will bring out such facts in order
3 for the jury to decide whether to believe her statements and/or how much credit to give to her testimony. The
4 jury's ability to make such an assessment would be compromised by a videotaped deposition because the tape
5 may not preserve subtle reactions of the witnesses under cross-examination that may favor the accused.

6       Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal
7 Procedure 15(a) which states that a material witness's deposition may be taken only upon a showing of
8 "exceptional circumstances." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). The material
9 witness here, however, has failed to demonstrate any "exceptional circumstances" justifying the impingement
10 of Ms. Tapia's Sixth Amendment rights. Nowhere does Ms. Bocanegra's motion identify any circumstances
11 that would justify this infringement of Ms. Tapia's rights at trial.

12       Ms. Bocanegra argues that under Torres-Ruiz v. United States District Court, 120 F.3d 933, 935 (9th
13 Cir. 1997), the fact that her continued incarceration is sufficient to satisfy their burden of proof under Rule
14 15(a). Almost any period of incarceration, by definition, will result in some sort of financial or emotional
15 hardship to that individual and her family. But hardship alone cannot constitute extraordinary circumstances.
16 Rather, as the Court in Torres-Ruiz made clear, extraordinary circumstances require something more: in that
17 case, "tremendous hardship." 120 F.3d at 936. In particular, the material witnesses in Torres-Ruiz were both
18 "the sole support for their respective families in Mexico." Id. at 935 (emphasis added). No such
19 circumstance exists here.

20       Furthermore, this Court should consider the unique circumstances faced by the Ninth Circuit in
21 Torres-Ruiz. Unlike this case, in Torres-Ruiz the material witness' motion for videotape deposition was
22 unopposed by the defendant. 120 F.3d at 934-35. Perhaps more importantly, in Torres-Ruiz, the defendant
23 entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case

---

[2] This Court should be mindful of the fact that the only reason the Government has not charged the material witnesses with a crime is that the Government seeks to introduce their testimony against the accused. The material witnesses could have been charged with illegal entry under 8 U.S.C. § 1325, which carries a maximum sentence of six (6) months imprisonment. Needless to say, the Government would not concern itself with the material witnesses' liberty interests had it, in fact, charged them with this offense.

was already near disposition when the motion was made. Id. at 936-37. As of now, however, the instant case stands in a much different procedural posture.

//

Ms. Tapia has pled not guilty to all counts of the Indictment. This motion is to be heard before the substantive motion hearing date currently scheduled before this Court on March 5, 2008. The defense has yet to conduct extensive investigation in this case. In short, it is very early in the case. To require Ms. Tapia to cross-examine the material witness at the current juncture of the proceedings would severely prejudice her future trial rights. Any cross examination of the material witness at this point would be at best meaningless, and at worst ineffective and potentially harmful to Ms. Tapia and her defense.

Finally, if the Court determines that the issue must be addressed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witness so that her continued detention would be unnecessary. Conditions of release for material witnesses is governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer **shall** order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witness in this case is a motion to modify the terms of her release, not for the draconian remedy of immediately ordering a videotaped deposition and deporting the material witness to El Salvador, which is approximately 2200 miles from San Diego, especially not at this very early stage of the proceedings.

The material witness here alleges that she cannot secure a personal surety able to post an appearance bond. Nowhere, however, does the material witness state her unwillingness to remain in the United States during the pendency of this case. This Court can, and should, modify the material witness' bonds to allow her to re-gain her freedom, while at the same time safeguarding Ms. Tapia's Sixth Amendment rights. The material witness has no incentive not to come back to court to testify. The material witness is not being charged with a crime. The material witness has no incentive to flee the country. Indeed, if the statement of

1 | facts in support of the complaint in this case is to be believed, this material witness was prepared to pay
2 | money to be smuggled illegally into the United States by friends and family members in the United States.
3 | Therefore, she obviously wants to remain in this country, fully within the subpoena power of the Court.

## III.

## CONCLUSION

For the reasons stated above, Ms. Tapia respectfully requests that this Court deny the material witness's motion for a videotaped deposition.

Respectfully submitted,

DATED: February 25, 2008  /s/ Stephen D. Demik\
**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Tapia

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy Chambers

Copy Assistant U.S. Attorney via ECF NEF

Copy Defendant

Dated: February 25, 2008           s/ *STEPHEN D. DEMIK*
                                   Federal Defenders of San Diego, Inc.
                                   225 Broadway, Suite 900
                                   San Diego, CA 92101-5030
                                   (619) 234-8467  (tel)
                                   (619) 687-2666  (fax)
                                   Stephen_Demik@fd.org (email)