KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0249-BTM |
| Plaintiff, | ) Date:  March 5, 2008 <br> ) Time:  9:00 a.m. |
| v. | ) |
| ALEJANDRA TAPIA(2), | ) GOVERNMENT'S RESPONSE AND <br> ) OPPOSITION TO DEFENDANT'S <br> ) MOTIONS TO: |
| Defendant. | ) <br> ) (1) COMPEL DISCOVERY; <br> ) (2) PRESERVE EVIDENCE; <br> ) (3) SUPPRESS STATEMENT; <br> ) (4) DISMISS DUE TO GRAND JURY <br> )       INSTRUCTION; AND <br> ) (5) FILE FURTHER MOTIONS. <br> ) <br> ) <br> ) TOGETHER WITH STATEMENT OF <br> ) FACTS, MEMORANDUM OF POINTS <br> ) AND AUTHORITIES. |
| _____ | ) |

   COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendant ALEJANDRA TAPIA ("Defendant(2)") which is based upon the files and records of this case.

//

//

//

# I

## STATEMENT OF THE CASE

On January 30, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendants, Tinamarie Torres Debenetto(1), and Alejandra Tapia(2), with one count of bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; and one count of bringing in illegal aliens without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) and 18 U.S.C. § 2. Both Defendants were arraigned on the Indictment on January 31, 2008, and entered a not guilty plea.

On February 21, 2008, Defendant(1), Tinamarie Torres Debenetto, entered a guilty plea to count 2 of the indictment pursuant to the terms of a plea agreement.

On February 22, 2008, Defendant(2) filed motions for discovery; to suppress statements; preserve and inspect evidence; dismiss the indictment for improper Grand Jury Instructions; and leave to file further motions.

# II

## STATEMENT OF FACTS

**A.    IMMIGRATION HISTORY**

Defendant is a United States citizen..

**B.    CRIMINAL AND ARREST HISTORY**

Defendant has one prior arrest on November 30, 2004, for possession of marijuana for sale.

**C.    ALIEN-SMUGGLING**

On January 14, 2008, at approximately 3:50 p.m., Defendant(2) entered the United States through primary lane number 16 at the San Ysidro, California, Port of Entry as the passenger in a Jeep Cherokee bearing California license plate 5ZFT682. Defendant(1), Tinamarie Torres Debenedetto, was the driver. Both Defendants applied for admission, both claiming United States citizenship. Defendant(1) presented a California driver license and Defendant(2) presented a California Identification Card. Both Defendants stated that they were going to San Diego. The primary inspecting officer, Customs and Border Protection ("CBP") Officer Jesus Segovia, noticed a strong smell of gasoline coming from the vehicle during the primary inspection.

1    Officer Segovia asked for the vehicle registration. Defendant(1) replied that it belongs to
2    the company for whom she works while handing the registration to Officer Segovia. While
3    Defendant(1) handed the registration document to Officer Segovia, he noticed that her eyes became
4    watery and her hand was shaking.

5    Defendant(2) told Officer Segovia that they had stayed at her grandmother's house in
6    Tijuana, Mexico. Officer Segovia continued the inspection and noticed that the gas tank area had
7    been modified. Officer Segovia lifted the tailgate and noticed that the floor was slightly arched
8    and bulging, he also noticed a shiny piece of metal was not covered by the vehicle carpeting.
9    Officer Segovia moved the carpet aside, and observed an individual concealed in the non-factory
10   compartment.

11   Officer Segovia instructed Defendant(1) to turn off the vehicle, and place her hands on the
12   steering wheel and instructed Defendant(2) to place her hands on the dashboard. Officer Segovia
13   called for assistance and AT-CET officers arrived and escorted the Defendants to the security
14   office. Officer Segovia attempted to start the vehicle by turning the key in the ignition, but the
15   vehicle would not start. Officer Segovia and the AT-CET officers then pushed the vehicle to the
16   secondary inspection area.

17   After the vehicle was moved to the secondary inspection area, Officer Segovia observed
18   the other officers remove the sheet metal covering from the non-factory compartment and he
19   observed two individuals inside the compartment.

20   CBP Officers G. Rios, J. James, and M. Pederson removed the sheet metal covering the
21   non-factory compartment in the gas tank area and assisted two individuals out of the non-factory
22   compartment.

23   The two individuals were determined to be citizens of Mexico without authority or
24   documentation to enter the United States. Officers later questioned the two individuals and both
25   stated that they were paying to be smuggled into the United States.

26   An alternative fuel source was located in the vehicle engine compartment.

27   **D.**     **DEFENDANT'S STATEMENT**

28   Defendant(1) was advised of her <u>Miranda</u> rights at approximately 6:48 p.m. and invoked.

1   CBP Officer G. Rios advised Defendant(2) of her <u>Miranda</u> rights at approximately 7:03
2   p.m. and she waived her rights and agreed to speak with the investigating officers. Defendant(2)
3   waived her rights orally and in writing by signing a written waiver. During the interview,
4   Defendant(2) was alert and coherent. She did not appear to be ill, intoxicated, or under the
5   influence of drugs. Defendant(2) appeared capable of communicating and offered rational
6   responses to questions. The officers did not make any threats or promises to Defendant(2).

7   Defendant(2) stated that she was not aware that there were undocumented aliens concealed
8   in the vehicle. Defendant(2) stated that she is unemployed and that she traveled to Tijuana for the
9   purpose of visiting her son's grandmother, who is ill. Defendant(2) stated that she has known
10  Defendant(1) for approximately 3 months. She also stated that Defendant(1) traveled to Tijuana
11  with her because Defendant(1) was going to visit friends and needed a ride. Defendant(2) stated
12  that she drove her Ford Aerostar to Tijuana on January 12, 2008, and stayed in Tijuana with
13  relatives. Defendant(2) communicated to Defendant(1) that her vehicle was not working well, so
14  Defendant(1) told her that she would borrow a friend's vehicle to drive back to North Hollywood.
15  Defendant(2) stated that because her vehicle was overheating, she left it parked near her family's
16  residence.

17  Defendant(2) said that she was going to North Hollywood to get more clothes and then
18  return to Tijuana. Defendant(2) stated that she and Defendant(1) stayed at a hotel the night before
19  her arrest because there was not enough room at her relative's home. Defendant(2) stated that
20  Defendant(1) left the hotel at approximately 11:30 a.m. to get the vehicle they were to use to drive
21  to North Hollywood, and then returned to pick up Defendant(2) at approximately 2:00 p.m.
22  Defenant(2) stated that (after being picked up) they traveled directly to the border and waited in
23  line approximately 1 hour. Defendant(2) stated that Defendant(1) told her they would stop and get
24  gas, after they crossed the border.

25  After the interview, Defendant(2) was allowed to make a telephone call to her family
26  members in the presence of agents using the speakerphone. During this conversation,
27  Defendant(2) told her son to pick up her van from the hotel. She later told another family member
28  to be sure to pick up the van at the hotel.

**E.    MATERIAL WITNESS'S STATEMENT**

The material witness, Isabel Bocanegra-Narvaez, was interviewed and stated that she is a citizen of Mexico and that she possessed no documents that would permit her to enter or reside in the United States. The material witness stated that she was born in Guanajuato, Mexico. The material witness stated that she traveled to Tijuana approximately 15 days prior to her apprehension. The material witness stated that her cousin made arrangements with an unknown female for her to be smuggled into the United States. The cousins were going to pay $3000.00 to the smugglers upon her arrival in Los Angeles. On the Saturday prior to her apprehension, she spoke with her cousin who told her to go to a taco stand near the hotel where she was staying to meet with an unknown male. This unknown male took her to a house where she stayed until the date of her apprehension. On January 14, 2008, another unknown male arrived at the house and placed her into the compartment. The material witness was in the compartment approximately one hour prior to arriving at the border. The material witness could not identify either Defendant from a photographic lineup.

**III**

**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

The Government intends to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1)    The Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements

1  that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

//
//
//

**(2)    Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

**(3)    Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4)    Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v.

1   Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such
2   disclosure obligation under Brady.

3         The United States is not obligated under Brady to furnish a defendant with information
4   which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady
5   is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already
6   known to the defendant. In such case, the United States has not suppressed the evidence and
7   consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

8         But even assuming Defendant does not already possess the information about factors which
9   might affect his guideline range, the United States would not be required to provide information
10  bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of
11  guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th
12  Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time
13  when the disclosure remains in value."). Accordingly, Defendant's demand for this information
14  is premature.

15        **(5)   Defendant's Prior Record.**

16  The United States has already provided Defendant with a copy of her criminal record in
17  accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

18        **(6)   Proposed 404(b) Evidence and 609 Evidence**

19        Should the United States seek to introduce any similar act evidence pursuant to Federal
20  Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its
21  proposed use of such evidence and information about such bad act at the time the United States'
22  trial memorandum is filed.

23        At this time, the United States intends to introduce as evidence Defendant's two prior
24  apprehensions for alien smuggling on the following dates: March 16, 2007 and May 18, 2007. The
25  United States also intends to introduce any other prior apprehensions, immigration contacts or
26  convictions that are released in discovery.

27  //
28  //

**(7)   Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8)   Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(9)   Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10)   Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify. The United States opposes Defendant's request to turn over the immigration files for the material witnesses. The United States will review the files to determine if any evidence to which Defendant is entitled is contained in the immigration files.

//

**(11)   Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12)   Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(13)   Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The

1  Government is not aware of any "tips" provided by anonymous or identified persons that resulted
2  in Defendant's arrest.
3        The Government objects to Defendant's request that the Government provide a list of every
4  witness to the crimes charged who will not be called as a Government witness. "There is no
5  statutory basis for granting such broad requests," and a request for the names and addresses of
6  witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." United
7  States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F.
8  Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible
9  information and evidence regarding any speculative defense claimed by Defendant. Wood v.
10 Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not
11 likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure
12 under Brady).

13       **(14)   Witnesses Favorable to the Defendant**

14       As stated earlier, the Government will continue to comply with its obligations under Brady
15 and its progeny. Other than the material witness in this case, the Government is not aware of any
16 witnesses who have made an "arguably favorable statement concerning the defendant or who could
17 not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

18       **(15)   Statements Relevant to the Defense**

19       To reiterate, the United States will comply with all of its discovery obligations. However,
20 "the prosecution does not have a constitutional duty to disclose every bit of information that might
21 affect the jury's decision; it need only disclose information favorable to the defense that meets the
22 appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted). Further,
23 Defendant is not entitled to the Grand Jury transcripts.

24       **(16)   Jencks Act Material**

25       The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified
26 on direct examination, the Government must give the Defendant any "statement" (as defined by
27 the Jencks Act) in the Government's possession that was made by the witness relating to the
28 subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

1  Act is (1) a written statement made by the witness and signed or otherwise adopted or approved
2  by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's
3  oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes
4  are read back to a witness to see whether or not the government agent correctly understood what
5  the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks
6  Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United
7  States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act
8  material after the witness testifies, the Government plans to provide most (if not all) Jencks Act
9  material well in advance of trial to avoid any needless delays.

10  **(17)   Giglio Information**
11  As stated previously, the United States will comply with its obligations pursuant to Brady
12  v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir.
13  1991), and Giglio v. United States, 405 U.S. 150 (1972).

14  **(18)   Agreements Between the Government and Witnesses**
15  The Government has not made or attempted to make any agreements with prospective
16  Government witnesses for any type of compensation for their cooperation or testimony.

17  **(19)   Informants and Cooperating Witnesses**
18  The Government must generally disclose the identity of informants where (1) the informant
19  is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United
20  States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court
21  may, in some circumstances, be required to conduct an in-chambers inspection to determine
22  whether disclosure of the informant's identity is required under Roviaro. See United States v.
23  Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there
24  is a confidential informant who is a material witness in this case, the Government will either
25  disclose the identity of the informant or submit the informant's identity to the Court for an in-
26  chambers inspection.
27  //
28

**(20)  Bias by Informants or Cooperating Witnesses**

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(21)  Law Enforcement Personnel Files**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(22)  TECS Reports**

Defendant is not entitled to TECS reports unless the Government seeks to introduce the TECS reports as 404(b) evidence. Prior border crossings do not fall within the scope of 404(b) unless offered for a purpose consistent with 404(b). Defendant's interpretation of Vega is simply wrong. Vega merely holds that, to qualify under Rule 404(b), an act need not be intrinsically "bad." United States v. Vega, 188 F.3d 1150 (9th Cir. 1999). Vega does not purport to overrule all the prior Ninth Circuit (and other courts of appeals) authority that universally holds that, for Rule 404(b) to apply, the "act" must relate to the defendant's character. If in fact Vega purports to overrule prior precedent, it is not good law and should not be followed. The Vega panel did not have the authority to overrule prior Ninth Circuit cases. See e.g., Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001).

**(23)  Expert Summaries**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(24)  Law Enforcement Training Records, Performance Goals and Policy Awards**

Defendant makes a blanket request for all law enforcement training manuals, instructions and information regarding policy goals and awards relating to the detection of contraband.

1  Defendant provides no authority for this request, nor does Defendant articulate any basis for the
2  discovery of this information. The Government opposes this request.

**(25)    A-File Review of Material Witness**

Defendant is not entitled to view the A-File of the material witness. The Government will review the material witness's A-File and provide to Defendant any information they are entitled to receive.

**(26)    Residual Request**

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

**(27)    Grand Jury Transcripts**

Defendant has not demonstrated a particularized need for the Grand Jury transcripts. The Government will provided Defendant with any prior statements of witnesses that it intends to call at trial.

**(28).   Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

1     **(29)**   **Rule 12 Notice**

2     The Government has turned over all discovery to which Defendant is entitled. Obviously, as this investigation continues more evidence may be uncovered and the Government will provide access to such newly acquired evidence as is required pursuant to the Federal Criminal Rules and caselaw interpreting those rules. The Government opposes being required to produce an exhibit list in advance of trial. The Government does intend to introduce during its case in chief, all admissible evidence discovered to Defendant.

**B.**     **PRESERVE AND INSPECT EVIDENCE**

The Government does not oppose Defendant's motion to inspect and photograph evidence seized . The Government will make the vehicle available at a time convenient to the Government. Moreover, the Government will allow Defendant to view and photograph the physical evidence seized from the vehicle.

**C.**     **DEFENDANT'S SUPPRESSION MOTION SHOULD BE DENIED**

    1.     <u>Defendant Has Failed to Provide a Sworn Declaration</u>

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress <u>only</u> when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition." Here, Defendant has failed to support her allegations with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth

1   Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a
2   motion to suppress evidence because the defendant did not properly submit a declaration pursuant
3   to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

4       2.    Defendant's Immigration Inspection Statements Should Not Be Suppressed

5   Defendant's statements made prior to her arrest were made in the context of routine border
6   questioning by a Customs and Border Patrol Officer, the type of questions which have been found
7   by the Supreme Court and the Ninth Circuit to be insufficient to trigger constitutional protections.
8   Detaining a person for routine border questioning is not custodial. United States v. Troise, 796
9   F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th
10  Cir.), modified by 255 F.3d 1154 (9th Cir. 2001). The Miranda requirement applies only when a
11  defendant is in custody and undergoes custodial interrogation. The police do not need to give
12  Miranda warnings before the defendant is in custody. United States v. Booth, 669 F.2d 1231, 1237
13  (9th Cir. 1981).

14      3.    Defendant's Post Miranda Statement was Voluntary

15  A statement made in response to custodial interrogation is admissible under Miranda v.
16  Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows that
17  the statement was made after an advisement of Miranda rights, and that the statement was not
18  elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986)
19  (preponderance of evidence standard governs voluntariness and Miranda determinations; valid
20  waiver of Miranda rights should not be found in the "absence of police overreaching").

21  A valid Miranda waiver depends on the totality of the circumstances, including the
22  background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369,
23  374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full
24  awareness of both the nature of the right being abandoned and the consequences of the decision
25  to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears the burden
26  of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.
27  In assessing the validity of a defendant's Miranda waiver, the court should analyze the totality of
28

the circumstances surrounding the interrogation. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc)) (valid waiver because the 17-year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents); (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters); (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession (see Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between Miranda warnings and interview).

In this case, Defendant's post-arrest confession should not be suppressed because it was preceded by a knowing, voluntary, and intelligent Miranda waiver. Agents advised Defendant of her Miranda rights in English. Defendant knowingly waived her Miranda rights and agreed to answer questions without the presence of an attorney. Defendant is familiar with the criminal justice system because of her prior arrests. She verbally stated that she understood his rights and was willing to be interviewed without an attorney present and she signed a waiver of rights expressing her decision to speak with Officers. Defendant's post-Miranda interview immediately followed her waiver of rights. This entire exchange was videotaped. There is no allegation or evidence of any physical or psychological coercion by any Government agents. Based on the totality of the circumstances, Defendant's statements were the product of a knowing, intelligent, voluntary waiver of her Miranda rights and therefore should not be suppressed.

**D.  THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

It bears noting that this Court and the Hon. John A. Houston, both recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here. See Order of Judge

1  Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4. The
2  United States adopts the reasoning in this Court's previous order and requests that the Court reach
3  the same result. Attached as Appendix 1 is the "Partial Transcript" of the Grand Jury Proceedings.
4  Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant
5  portions of the voir dire proceedings.

6  This Court, and other courts of this district, have repeatedly rejected the arguments raised
7  by Defendant before, and we ask the Court to do so again.

8  **E.   LEAVE TO FILE FURTHER MOTIONS**

9  The Government does not oppose this motion, as long as future motions are based upon
10 evidence or information not now available.

11                                          **VI**

12                                      **CONCLUSION**

13 For the foregoing reasons, the United States requests that the Court deny Defendant's
14 motions, except where unopposed.

15 DATED: February 29, 2008.

16                                            Respectfully submitted,

17                                            KAREN P. HEWITT
                                              United States Attorney
18
                                              s/ A. Dale Blankenship
19                                            A. DALE BLANKENSHIP
                                              Assistant United States Attorney
20                                            Attorneys for Plaintiff
                                              United States of America
21                                            Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 08CR0249-BTM |
| Plaintiff, ) | |
| ) | **CERTIFICATE OF SERVICE** |
| v. ) | |
| ALEJANDRA TAPIA(2), ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

**1. COMPEL DISCOVERY;**
**2. PRESERVE EVIDENCE;**
**3. SUPPRESS STATEMENT;**
**4. DISMISS INDICTMENT; AND**
**5. FILE FURTHER MOTIONS.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Stephen Demick, Esq., Stephen_Demick@fd.org**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 29, 2008.

                                               s/ A. Dale Blankenship
                                               A. DALE BLANKENSHIP