1   KAREN P. HEWITT
    United States Attorney
2   A. DALE BLANKENSHIP
    Assistant United States Attorney
3   California State Bar No. 235960
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California 92101-8893
5   Telephone: (619) 557-6199/(619) 235-2757 (Fax)
    Email: Dale.Blankenship@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA          )  Criminal Case No. 08CR0249-BTM
                                      )
12              Plaintiff,            )
                                      )
13                                    )  IN LIMINE DATE:
        v.                            )  TIME:              2:00 p.m.
14                                    )
                                      )  TRIAL DATE:        April 1, 2008
15                                    )  TIME:              9:00 a.m.
                                      )
16  ALEJANDRA TAPIA(2),               )  NOTICE OF UNITED STATES' MOTIONS
                                      )  AND MOTIONS IN LIMINE TO:
17              Defendant.            )  (A)   PRECLUDE EXPERT TESTIMONY;
                                      )  (B)   ADMIT 404(B);
18                                    )  (C)   EXCLUDE ALL WITNESSES
                                      )        EXCEPT CASE AGENT;
19                                    )  (D)   PROHIBIT REFERENCE TO
                                      )        DEFENDANT'S HEALTH, AGE, ETC.;
20                                    )  (E)   PRECLUDE SELF-SERVING
                                      )        HEARSAY;
21                                    )  (F)   LIMIT CHARACTER EVIDENCE;
                                      )  (G)   ADMIT EVIDENCE OF TRANSPORT
22                                    )        OF WITNESS;
                                      )  (H)   ADMIT EVIDENCE OF CONDITION OF
23                                    )        WITNESS;
                                      )  (I)   PRECLUDE EVIDENCE OF DURESS
24                                    )        AND NECESSITY;
                                      )  (J)   ADMIT CO-CONSPIRATOR
25                                    )        STATEMENTS;
                                      )  (K)   ADMIT DEPOSITION VIDEO
26                                    )  (L)   ADMIT DEFENDANT'S STATEMENTS
                                      )  (M)   RECIPROCAL DISCOVERY;
27                                    )
                                      )  TOGETHER WITH STATEMENT OF FACTS
28  _____ )  AND MEMORANDUM OF POINTS AND
                                      )  AUTHORITIES.

1    COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2    KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant United States

3    Attorney, and hereby files its Motions in Limine.  These Motions are based upon the files and records

4    of the case together with the attached statement of facts and memorandum of points and authorities.

5                                                        **I**

6                                   **STATEMENT OF THE CASE**

7            On January 30, 2008, a federal grand jury for the Southern District of California returned a

8    two-count Indictment, charging Defendants, Tinamarie Torres Debenetto(1), and Alejandra Tapia(2),

9    with one count of bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii)

10   and 18 U.S.C. § 2; and one count of bringing in illegal aliens without presentation, in violation of 8

11   U.S.C. § 1324(a)(2)(B)(iii) and 18 U.S.C. § 2.  Both Defendants were arraigned on the Indictment on

12   January 31, 2008, and entered a not guilty plea.

13           On February 21, 2008, Defendant(1), Tinamarie Torres Debenetto, entered a guilty plea to count

14   2 of the indictment pursuant to the terms of a plea agreement.

15           On February 22, 2008, Defendant(2) filed motions for discovery; to suppress statements;

16   preserve and inspect evidence; dismiss the indictment for improper Grand Jury Instructions; and leave

17   to file further motions.

18                                                        **II**

19                                    **STATEMENT OF FACTS**

20   **A.      IMMIGRATION HISTORY**

21   Defendant is a United States citizen..

22   **B.      CRIMINAL AND ARREST HISTORY**

23   Defendant has one prior arrest on November 30, 2004, for possession of marijuana for sale.

24   **C.      ALIEN-SMUGGLING**

25           On January 14, 2008, at approximately 3:50 p.m., Defendant(2) entered the United States

26   through primary lane number 16 at the San Ysidro, California, Port of Entry as the passenger in a Jeep

27   Cherokee bearing California license plate 5ZFT682. Defendant(1), Tinamarie Torres Debenedetto, was

28   the driver.   Both Defendants applied for admission, both claiming United States citizenship.

                                                        1

1    Defendant(1) presented a California driver license and Defendant(2) presented a California

2    Identification Card. Both Defendants stated that they were going to San Diego. The primary inspecting

3    officer, Customs and Border Protection ("CBP") Officer Jesus Segovia, noticed a strong smell of

4    gasoline coming from the vehicle during the primary inspection.

5    Officer Segovia asked for the vehicle registration. Defendant(1) replied that it belongs to the

6    company for whom she works while handing the registration to Officer Segovia. While Defendant(1)

7    handed the registration document to Officer Segovia, he noticed that her eyes became watery and her

8    hand was shaking.

9    Defendant(2) told Officer Segovia that they had stayed at her grandmother's house in Tijuana,

10   Mexico. Officer Segovia continued the inspection and noticed that the gas tank area had been modified.

11   Officer Segovia lifted the tailgate and noticed that the floor was slightly arched and bulging, he also

12   noticed a shiny piece of metal was not covered by the vehicle carpeting. Officer Segovia moved the

13   carpet aside, and observed an individual concealed in the non-factory compartment.

14   Officer Segovia instructed Defendant(1) to turn off the vehicle, and place her hands on the

15   steering wheel and instructed Defendant(2) to place her hands on the dashboard. Officer Segovia called

16   for assistance and AT-CET officers arrived and escorted the Defendants to the security office. Officer

17   Segovia attempted to start the vehicle by turning the key in the ignition, but the vehicle would not start.

18   Officer Segovia and the AT-CET officers then pushed the vehicle to the secondary inspection area.

19   After the vehicle was moved to the secondary inspection area, Officer Segovia observed the

20   other officers remove the sheet metal covering from the non-factory compartment and he observed two

21   individuals inside the compartment.

22   CBP Officers G. Rios, J. James, and M. Pederson removed the sheet metal covering the non-

23   factory compartment in the gas tank area and assisted two individuals out of the non-factory

24   compartment.

25   The two individuals were determined to be citizens of Mexico without authority or

26   documentation to enter the United States. Officers later questioned the two individuals and both stated

27   that they were paying to be smuggled into the United States.

28   An alternative fuel source was located in the vehicle engine compartment.

1

### D.    <u>DEFENDANT'S STATEMENT</u>

2

Defendant(1) was advised of her <u>Miranda</u> rights at approximately 6:48 p.m. and invoked.

3

CBP Officer G. Rios advised Defendant(2) of her <u>Miranda</u> rights at approximately 7:03 p.m. and

4 she waived her rights and agreed to speak with the investigating officers. Defendant(2) waived her

5 rights orally and in writing by signing a written waiver. During the interview, Defendant(2) was alert

6 and coherent. She did not appear to be ill, intoxicated, or under the influence of drugs. Defendant(2)

7 appeared capable of communicating and offered rational responses to questions. The officers did not

8 make any threats or promises to Defendant(2).

9

Defendant(2) stated that she was not aware that there were undocumented aliens concealed in

10 the vehicle. Defendant(2) stated that she is unemployed and that she traveled to Tijuana for the purpose

11 of visiting her son's grandmother, who is ill. Defendant(2) stated that she has known Defendant(1) for

12 approximately 3 months. She also stated that Defendant(1) traveled to Tijuana with her because

13 Defendant(1) was going to visit friends and needed a ride. Defendant(2) stated that she drove her Ford

14 Aerostar to Tijuana on January 12, 2008, and stayed in Tijuana with relatives. Defendant(2)

15 communicated to Defendant(1) that her vehicle was not working well, so Defendant(1) told her that she

16 would borrow a friend's vehicle to drive back to North Hollywood. Defendant(2) stated that because

17 her vehicle was overheating, she left it parked near her family's residence.

18

Defendant(2) said that she was going to North Hollywood to get more clothes and then return

19 to Tijuana. Defendant(2) stated that she and Defendant(1) stayed at a hotel the night before her arrest

20 because there was not enough room at her relative's home. Defendant(2) stated that Defendant(1) left

21 the hotel at approximately 11:30 a.m. to get the vehicle they were to use to drive to North Hollywood,

22 and then returned to pick up Defendant(2) at approximately 2:00 p.m. Defendant(2) stated that (after

23 being picked up) they traveled directly to the border and waited in line approximately 1 hour.

24 Defendant(2) stated that Defendant(1) told her they would stop and get gas, after they crossed the

25 border.

26

After the interview, Defendant(2) was allowed to make a telephone call to her family members

27 in the presence of agents using the speakerphone. During this conversation, Defendant(2) told her son

28

1   to pick up her van from the hotel.  She later told another family member to be sure to pick up the van

2   at the hotel.

3   **E.     MATERIAL WITNESS'S STATEMENT**

4   The material witness, Isabel Bocanegra-Narvaez, was interviewed and stated that she is a citizen

5   of Mexico and that she possessed no documents that would permit her to enter or reside in the United

6   States.  The material witness stated that she was born in Guanajuato, Mexico.  The material witness

7   stated that she traveled to Tijuana approximately 15 days prior to her apprehension.  The material

8   witness stated that her cousin made arrangements with an unknown female for her to be smuggled into

9   the United States.  The cousins were going to pay $3000.00 to the smugglers upon her arrival in Los

10  Angeles.  On the Saturday prior to her apprehension, she spoke with her cousin who told her to go to

11  a taco stand near the hotel where she was staying to meet with an unknown male.  This unknown male

12  took her to a house where she stayed until the date of her apprehension.  On January 14, 2008, another

13  unknown male arrived at the house and placed her into the compartment.  The material witness was in

14  the compartment approximately one hour prior to arriving at the border. The material witness could not

15  identify either Defendant from a photographic lineup.

16  **II**

17  **UNITED STATES' MOTIONS IN LIMINE**

18  **A.     THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY THE DEFENSE**

19  On September 12, 2004, the Court granted the United States' request for reciprocal discovery,

20  pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b).  Therefore, Defendant must permit the

21  United States to inspect and copy or photograph any results or reports of physical or mental

22  examinations and of scientific tests or experiments made in connection with the particular case, or

23  copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as

24  evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to

25  call at trial.  Moreover, the United States requested that Defendant disclose written summaries of

26  testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence

27  as evidence at trial.  Defendant has provided neither proper notice of any expert witness, nor any reports

28

1   by expert witnesses regarding his anticipated testimony.  Accordingly, Defendant should not be

2   permitted to introduce any expert testimony.

3          **B.      THE UNITED STATES MAY USE 404(B) EVIDENCE**

4          The Government provided Defendant with notice that it intended to introduce evidence of

5   Defendant's prior alien smuggling in its case in chief to demonstrate modus operandi, opportunity,

6   intent, plan, knowledge, and absence of mistake or accident.  The evidence of Defendant's prior alien

7   smuggling activity will be introduced through the testimony of Tinamarie Torres-Debenedetto, the co-

8   defendant.  The co-defendant's testimony will be corroborated by the motel receipts found on

9   Defendant's person.  It is the Government's position that this evidence is inextricably intertwined with

10  the charged offense and therefore admissible, this evidence is also admissible as 404(b) evidence.

11         Rule 404(b) prohibits evidence of prior crimes or bad acts merely to prove bad character, but

12  allows it in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or

13  absence of mistake or accident."  The United States may use such prior bad acts if it establishes its

14  relevance to an actual issue in the case.  <u>United States v. Hodges</u>, 770 F.2d 1475, 1479 (9th Cir. 1985).

15         Rule 404(b) employs a four-prong test for proffered evidence. Extrinsic evidence of prior

16  misconduct may be admitted if it (1) tends to prove a material element; (2) is not too remote in time; (3)

17  is sufficient to support a finding that the defendant committed that other act; and (4) in some cases, is

18  similar to the offense charged.  <u>United States v. Bibo-Rodriguez</u>, 922 F.2d 1398, 1400-01 (9th Cir.

19  1991).  In addition, the probative value of the evidence must not be substantially outweighed by the

20  danger of unfair prejudice.  <u>Id.</u>

21         Defendant is charged with alien smuggling.  The United States requests that evidence and

22  testimony regarding Defendant's prior alien smuggling activity be allowed.  The prior smuggling acts

23  took place in essentially the same manner.  Defendant and co-defendant would travel to Tijuana, they

24  would stay at the same hotel while waiting for the load, and they would leave automobiles in accessible

25  areas both north and south of the border.  Thus, this evidence should be admitted pursuant to Rule

26  404(b) to prove knowledge, intent, modus operandi and absence of mistake or accident.

27         Applying the four-prong test, such evidence of prior misconduct should be admitted.  First, it

28  tends to prove a material element of the offense at hand. Specifically, it shows that Defendant had the

requisite knowledge and intent to violate the law by smuggling at the international border.  The Ninth Circuit has held that evidence of a prior similar offense is highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose.  See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325-26 (9th Cir. 1992) (affirming the admission of evidence in an alien smuggling prosecution that the defendant had been observed at a residence used in the transportation of illegal aliens); United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (affirming the admission of a prior alien smuggling conviction to prove knowledge or intent in an alien smuggling prosecution); United States v. Longoria, 624 F.2d 66, 69 (9th Cir. 1980) (affirming the admission of a prior alien smuggling conviction to prove knowledge or intent in an alien smuggling prosecution); United States v. Castro-Castro, 464 F.2d 336, 337 (9th Cir. 1972), cert. denied, 410 U.S. 916 (1973) (admitting evidence of prior drug smuggling arrest, even after the defendant was acquitted at trial).

Second, the event is not remote in time, rather, it took place within a few months of the charged offense.  See United States v. Rude, 88 F.3d 1538, 1550 (9th Cir. 1996) (eight years not too remote); United States v. Houser, 929 F.2d 1369, 1373 (9th Cir. 1991) (four years not too remote); United States v. Ono, 918 F.2d 1462, 1465 n.2 (9th Cir. 1990) (seven-year-old conviction admissible); United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen-year-old conviction admissible); United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989) (convictions over ten years old not too remote).  Moreover, Defendant's arrest occurred in 2004.

Third, the evidence from the incident would be sufficient to support a finding that Defendant committed the other act.  See Huddleston v United States, 485 U.S. 681, 690 (1988) (holding that similar "other acts" are admissible if, using a preponderance of the evidence standard, there is evidence to support a jury's finding that the defendant committed the similar act, and that the other act is probative of a material issue other than the defendant's character. ).  The United States will present testimony and documentation to establish the nature of Defendant's conduct and Defendant's identity as the person involved in the prior smuggling activity.

Fourth, the prior smuggling activity is very similar.  Each smuggling event took place in the San Diego area, using similar means and methods.

1    Finally, under Rule 403, the probative value of a prior bad act must not be "substantially

2    outweighed by the danger of unfair prejudice . . . ."  Here, where Defendant is charged with alien

3    smuggling at the border and used the same methods to smuggle aliens in the recent past, the probative

4    value of such prior bad act is strong and outweighs any risk of prejudice against Defendant.  While the

5    evidence may carry with it some degree of prejudice, "[r]elevant evidence is inherently prejudicial; but

6    it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of

7    relevant matter under Rule 403."  United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir. 1983).  Thus,

8    the United States respectfully requests that it be permitted to enter evidence of Defendant's prior alien

9    smuggling.

10    **C.    THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

11

12    Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

13    essential to the presentation of the party's cause" should not be ordered excluded from the court during

14    trial.  The case agent in the present matter has been critical in moving the investigation forward to this

15    point and is considered by the United States to be essential to presentation of the trial.  As such, the case

16    agent's presence at trial is necessary to the United States.

17    The United States requests that Defendant's testifying witnesses be excluded during trial

18    pursuant to Rule 615.

19    **D.    THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

20    Evidence of, and thus argument referring to, Defendant's health, age, finances, education and

21    potential punishment is inadmissible and improper.  Specifically, there is no need to refer to Defendant's

22    homelessness.

23    "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Rule 403 provides

24    further that even relevant evidence may be inadmissible "if its probative value is substantially

25    outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions explicitly

26

27

28

7

1 | instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or

2 | sympathy." § 3.1 (2000 Edition).[1]

3 |     Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict.

4 | United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992). Any

5 | mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or

6 | innocence. Therefore, the United States respectfully requests this Court to preclude any mention of

7 | possible punishment at any point in this trial.

8 |     Reference to Defendant's health, age, finances, education and potential punishment may be

9 | relevant at sentencing. However, in an alien smuggling trial, such reference is not only irrelevant and

10 | unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

11 | **E.      SELF-SERVING HEARSAY IS INADMISSIBLE**

12 |     Defendant's out of court statements are inadmissible hearsay when offered by defendant through

13 | witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the

14 | evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-

15 | serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United

16 | States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th

17 | Cir. 1988).

18 |     In this case, the United States anticipates that Defendant may attempt to have the United States'

19 | witnesses testify about certain statements which Defendant made to inspectors. Thus, the United States

20 | moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States'

21 | witnesses or (b) defense witnesses.

22 | **F.      THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

23 |     The United States anticipates that Defendant may improperly attempt to introduce testimony

24 | regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good

25 |

26 |

27 |     [1]     Additionally, it is inappropriate for a jury to be informed of the consequences of their

28 | verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

conduct violates Federal Rule of Evidence 405(a).  <u>United States v. Barry</u>, 841 F.2d 1400, 1403 (9th Cir. 1987);  <u>Government of Virgin Islands v. Grant</u>, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness can not offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant.  <u>United States v. Giese</u>, 597 F.2d 1170 (9th Cir. 1979) <u>cert. denied</u>, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation);  <u>United States v. Hedgecorth</u>, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible.  The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a).  <u>See</u> <u>United States v. Diaz</u>, 961 F.2d 1417 (9th Cir. 1992) (holding that it is impermissible to ask a character witness about the defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves <u>in</u> <u>limine</u> to prohibit Defendant from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in alien smuggling.

## G.    EVIDENCE OF HOW THE ALIEN WAS TRANSPORTED SHOULD BE ADMITTED

The United States should be permitted to present evidence regarding the manner of transport of the alien smuggled by Defendant.  The probative value of such evidence clearly outweighs any risk of prejudice.

Under Rule 401, relevant evidence mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 states that all relevant evidence is admissible.

1    In the instant case, the manner of transport is extremely relevant in that it relates to how the alien

2    was transported in the vehicle driven by Defendant. The United States requests that evidence regarding

3    the manner of transport be permitted as it directly bears on the crime of alien smuggling and the question

4    of Defendant's knowledge of the smuggling. The compartment was located in the rear of the vehicle,

5    with access through the cargo area of the vehicle and was inclose proximity to the Defendant while she

6    was in the vehicle.

7    Additionally, this evidence is admissible since it is "inextricably intertwined" with the charged

8    offense. <u>See</u> <u>United States v. Beckman</u>, 298 F.3d 788, 790 (9th Cir. 2002) (admitting, in a drug

9    importation case, a witness' testimony about the defendant's prior drug runs under both Rule 404(b) and

10    as being "inextricably intertwined" with the charged offense). The Ninth Circuit has recognized two

11    categories of evidence that may be considered "inextricably intertwined" with a charged offense and

12    therefore admitted without regard to Rule 404(b). <u>See</u> <u>United States v. DeGeorge</u>, 380 F.3d 1203, 1220

13    (9th Cir. 2004). First, evidence of prior acts may be admitted if the evidence "constitutes a part of the

14    transaction that serves as the basis for the criminal charge." <u>Id.</u> Second, prior act evidence may be

15    admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and

16    comprehensible story regarding the commission of the crime." <u>Id.</u>

17    Here, the evidence is part of the basis for the criminal charges. The evidence also allows for a

18    comprehensible story as to why Defendant knew she was smuggling aliens.

19    **H.    EVIDENCE OF THE ALIEN'S CONDITION SHOULD BE ADMITTED**

20    The United States should be permitted to present evidence regarding the alien's condition when

21    she was discovered by inspectors. Her condition shows that it was critical for Defendant to know the

22    alien was in the vehicle:

23    The evidence introduced at trial on this knowledge issue was sufficient. **The nature of
      the speaker box and the heat in the camper shell would have required an

24    expeditious retrieval of the smuggled alien from the compartment once the truck
      crossed the border**. There was also evidence that the smugglers were not paid in

25    advance. **A reasonable juror could therefore have inferred that the driver would
      have had to have known of the alien's presence; otherwise, the driver may not have

26    delivered the alien alive, and the smugglers would not have been paid**. Also,
      Schemenauer owned the truck, and evidence was introduced under Fed. R. Evid. 404(b)

27    with regard to her knowledge, indicating that Schemenauer and Garcia-Ahumada
      had knowingly worked together in smuggling operations before. Given this evidence, the

28    district court did not commit clear error in concluding that a reasonable juror could infer
      that Schemenauer knew that there was an illegal alien hidden in the speaker box.

08CR0249-BTM

1

2    United States v. Schemenauer, 394 F.3d 746, 752 (9th Cir. 2005) (emphasis added). There were two

3    aliens in a very small, non-factory compartment in an area usually occupied by a gas tank, from which

4    they could not remove themselves. If they were left in the compartment and died, the smugglers that

5    allegedly hired Defendant and Defendant would not have been paid. Additionally, this evidence is

6    admissible since it is "inextricably intertwined" with the charged offense. See United States v.

7    Beckman, 298 F.3d 788, 790 (9th Cir. 2002). The aliens condition is one of many facts that makes this

8    matter memorable to the inspectors. As such, it is also relevant to their credibility. Finally, the

9    probative value of such evidence clearly outweighs any risk of prejudice.

10        Defendant may cite United States v. Gonzalez-Flores, 418 F.3d 1093 (9th Cir. 2005). In

11   Gonzalez-Flores, the defendant charged with smuggling aliens by leading a group of nearly two dozen

12   Mexicans into the United States across the desert. At trial, the prosecution introduced evidence that two

13   girls in the defendant's group suffered heat stroke. The Ninth Circuit held that this evidence was

14   prejudicial:

15           As a logical matter, the fact that two girls in Gonzalez's group suffered heat stroke does
             not affect the probability (1) that Gonzalez brought aliens into the United States other
16           than at a recognized port of entry, (2) that Gonzalez knew they were aliens, or (3) that
             Gonzalez intended to violate U.S. immigration law by bringing them in. The heat stroke
17           is a mere detail in the story of the offense.

18   Gonzalez-Flores, 418 F.3d 1093 (9th Cir. 2005) .

19        Unlike Gonzalez-Flores, the evidence of the condition of the aliens is relevant to Defendant's

20   knowledge. Thus, the Court should affirm its earlier ruling allowing this evidence.

21   **I.    THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND
            NECESSITY**

22        A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and

23   precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any

24   defense, objection, or request which is capable of determination without the trial of the general issue

25   may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per

26   curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e).

27        Generally, motions are capable of pretrial determination if they raise issues of law, rather than

28   issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically
     approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous

occasions.  See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1)    Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)    Defendant had a well-grounded fear that the threat would be carried out; and

(3)    There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997.  If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense.  See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1)    that he was faced with a choice of evils and chose the lesser evil;

(2)    that he acted to prevent imminent harm;

(3)    that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4)    that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense.  The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

1    **J**.    <u>**ADMIT CO-CONSPIRATOR STATMENTS**</u>

2    The material witness should be permitted to testify regarding statements made by the other

3    smugglers about the smuggling arrangements.  Specifically, one material witness is expected to testify

4    that her husband made arrangements for her to be smuggled into the United States and that she spoke

5    with the individuals who actually placed her in the compartment.

6    The co-defendant should also be permitted to testify about statements she made to Defendant

7    during and in furtherance of the conspiracy, and the co-defendant should be permitted to testify about

8    statements made by smugglers to Defendant in furtherance of the smuggling offense.

9    While an out of court statement offered for the truth of the matter asserted is normally considered

10   hearsay (<u>see</u> Fed. R. Evid 801(c)), the Federal Rules of Evidence and the United States Supreme Court

11   in <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004), recognize that some out of court statements are

12   non-hearsay, and thus, are admissible.  <u>See</u> Fed. R. Evid. 801(d); <u>Crawford</u>, 124 S. Ct. at 1367

13   (describing non-testimonial exceptions such as business records and statements in furtherance of a

14   conspiracy).  Moreover, admissions by a party-opponent are not hearsay.

15   The Federal Rules of Evidence specifically define statements made by a coconspirator of a party

16   during the course and  in furtherance of a conspiracy as non-hearsay.  <u>See</u> Fed. R. Evid. 801(d)(2)(E).

17   Such statements are not hearsay and were deemed non-testimonial by the Supreme Court in <u>Crawford</u>.

18   In fact, the <u>Crawford</u> decision specifically identifies co-conspirator statements as non-testimonial, citing

19   its prior decision in <u>United States v. Bourjaily</u>, 483 U.S. 171 (1987), in which the Court held that even

20   though the defendant had no opportunity to cross examine the declarant at the time that he made the

21   statements and the declarant was unavailable to testify at trial, the admission of the declarant's

22   statements against the defendant did not violate the Confrontation Clause. <u>Crawford</u>, 124 S. Ct at 1368.

23   The Supreme Court approved its prior holding regarding co-conspirator statements, citing <u>Bourjaily</u> as

24   an example of an earlier case that was consistent with the principal that the Confrontation Clause

25   permits the admission of non-testimonial statements in the absence of a prior opportunity for cross

26   examination.  <u>Crawford</u>, 124 S. Ct at 1367.

27   The Ninth Circuit has allowed such co-conspirator statements post-<u>Crawford</u>.  <u>See</u> <u>United States</u>

28   <u>v. Allen</u>, 425 F.3d 1231, 1235 (9th Cir. 2005) (Therefore, Washington's statement to O'Neal, as a

13                                                                                          08CR0249-BTM

statement made in furtherance of the conspiracy, was not testimonial, and its introduction did not violate the Confrontation Clause.)

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the United States demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir. 1991), cert. denied, 503 U.S. 940 (1992). The existence of a conspiracy and defendant's involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence. Fed. R. Evid. 104; United States v. Bourjaily, 483 U.S. at 175. "Furtherance of a conspiracy" is to be interpreted broadly.  United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

The United States is not required to charge the defendant with conspiracy, United States v. Layton, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to admit co-conspirator statements. United States v. Jones, 542 F.2d 186 (4th Cir. 1976). Further, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant.  United States v LeRoux, 738 F.2d 943, 949-950 (8th Cir. 1984).  In United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy."  In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it.  United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible. Bourjaily, 483 U.S. at 180. Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under the 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability. Id. at 182-184.

In this case, the conspiracy consists of the efforts made by known and unknown persons, including Defendant, the co-defendant, the material witness, and others, to smuggle the material witness into the United States.  The United States anticipates that the material witness will testify that she

1   arranged to be smuggled into the United States.  The United States further anticipates that the material

2   witness will testify that she met with the coconspirators in Mexico before being placed into the non-

3   factory compartment of the vehicle.

4          The United States anticipates that the testimony of the co-defendant, and the material witness

5   at trial will demonstrate that Defendant and others were part of the conspiracy.  Specifically, the United

6   States anticipates that the co-defendant made arrangements with alien smugglers in Mexico to smuggle

7   aliens in exchange for payment and that Defendant was a party to the same arrangements.

8          The co-conspirator statements that the United States contends are non-hearsay involve the

9   smuggling arrangements made by the material witness and Defendant.  The United States anticipates

10  that the material witness will testify at trial that she was going to be smuggled into the United States.

11  Thus, the smuggling arrangements were an integral component of the smuggling conspiracy and such

12  statements were made in furtherance of the smuggling venture.

13         Although Defendant may have joined the conspiracy after the material witness made the

14  arrangements, the statements are still admissible against Defendant because the conspiracy already

15  existed when the statements were made.  See United States Gypsum Co., 333 U.S. at 393; LeRoux, 738

16  F.2d at 949-950; Hickey, 360 F.2d at 140.

17         As such, all statements regarding the arrangements made by the material witness, statements

18  made by co-defendant in furtherance of the smuggling venture, and statements made by others to

19  Defendant should be admissible against Defendant.

20         **K.        MOTION TO ADMIT VIDEOTAPED DEPOSITION**

21         The United States anticipates that the material witnesses in this case will return to the United

22  States to testify at Defendant's trial.  Their attorney has maintained contact with the witnesses and

23  represents that they will be available at trial.

24         Should the witnesses not appear to testify, the United States moves to admit the videotapes and

25  transcripts of the depositions conducted of each of the material witness.  Defendant was present and

26  represented by counsel at the depositions, and had the opportunity to confront and cross-examine the

27  witness. Objections were made and preserved. Consequently, the deposition videotapes and transcripts

28  should be admissible pursuant to 8 U.S.C. § 1324(d) and Federal Rule of Criminal Procedure 15(f).

08CR0249-BTM

**L.    MOTION TO ADMIT DEFENDANT'S STATEMENTS**

Following his arrest in this case, Defendant was advised of her <u>Miranda</u> rights and agreed to waive them.  The advisal and waiver were captured on videotape.  This Court has scheduled a hearing regarding Defendant's post-<u>Miranda</u> statement for March 27, 2008.

Any statements made by Defendant to co-defendant, or others are admissible as statements of a party opponent under Fed. R. Evid. 801(d)(2).  Defendant's statements are admissible if offered against her and the statements are her own.

The United States moves to admit the videotape of Defendant's post-arrest statements into evidence and to play it for the jury.  Defendant's statement is admissible as non-hearsay.  See Rule 801(d)(2).

**M.    UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery.  The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant.  Defendant has not provided the United States with any documents or statements.  Accordingly, the United States will object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**XV**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that its motions <u>in</u> <u>limine</u> be granted.

DATED: March 19, 2008.


Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

1

**UNITED STATES DISTRICT COURT**

2

**SOUTHERN DISTRICT OF CALIFORNIA**

3

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0249-BTM |

4

    Plaintiff,     ) ) **CERTIFICATE OF SERVICE**

5

  v.            )

6

ALEJANDRA TAPIA(2),   )

7

    Defendant.    )

8

IT IS HEREBY CERTIFIED THAT:

9

10
   I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

11
   I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S MOTIONS IN LIMINE TO:**

12

13   (A)  PRECLUDE EXPERT TESTIMONY BY THE DEFENSE;
   (B)  ADMIT 404(B)/609 EVIDENCE;
   (C)  EXCLUDE ALL WITNESSES EXCEPT CASE AGENT;
14   (D)  PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, ETC.;
   (E)  PRECLUDE SELF-SERVING HEARSAY;
15   (F)  LIMIT CHARACTER EVIDENCE;
   (G)  ADMIT EVIDENCE OF TRANSPORT OF WITNESS;
16   (H)  ADMIT EVIDENCE OF CONDITION OF WITNESS;
   (I)  PRECLUDE EVIDENCE OF DURESS AND NECESSITY;
17   (J)  ADMIT CO-CONSPIRATOR STATEMENTS;
   (K)  ADMIT DEPOSITION VIDEO;
18   (L)  ADMIT DEFENDANT'S STATEMENTS;
   (M)  RENEW ITS MOTION FOR RECIPROCAL DISCOVERY;

19

20
on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

21
   **Stephen Demick, Esq., Stephen_Demick@fd.org**

22
   I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

23
   **None**

24

25
the last known address, at which place there is delivery service of mail from the United States Postal Service.

26
   I declare under penalty of perjury that the foregoing is true and correct. Executed on March 19, 2008.

27
         s/ A. Dale Blankenship
         A. DALE BLANKENSHIP

28

          08CR0249-BTM