**STEPHEN D. DEMIK**
Cal. State Bar No. 221167
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467

Attorneys for Ms. Tapia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR0249-BTM |
| Plaintiff, | DATE: April 1, 2008<br>TIME: 9:00 a.m. |
| v. | |
| ALEJANDRA TAPIA (2), | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**

Ms. Tapia hereby incorporates by reference the statement of facts set forth in previous motions. She adds the following.

Ms. DeBenedetto was driving the Jeep Cherokee at the San Ysidro Port of Entry on January 14, 2008. Ms. Tapia was a passenger in that vehicle. Ms. DeBenedetto claimed ownership of the Jeep, telling the primary officer that it was a "company vehicle." She also told agents that she was going to San Diego. The primary agent wrote in his report that Ms. DeBenedetto was "nervous," had "watery eyes," and that her hand shook as she handed the agent her identification.

Ms. DeBenedetto was taken into an interview room and interviewed by agents Rios and James. That interview was videotaped. Prior to her <u>Miranda</u> advisal, Agent Rios told her that there were two undocumented aliens in the car she was driving. Ms. DeBenedetto said, "I don't know anything about that."

After Ms. DeBenedetto asked for a lawyer to be present before answering questions, she made a phone call on speaker phone in front of the agents.[1] Agent Rios admonished Ms. DeBenedetto that the call would "have to be on speaker." Ms. DeBenedetto acknowledged this and made the phone call. On the phone call, Ms. DeBenedetto told "Grace" that she "wasn't sure" what was going on. Grace told Ms. DeBenedetto to "be careful" at the end of the conversation. Ms. DeBenedetto also told agents that she was "self-employed" during the biographical data questioning.

On February 21, 2008 Ms. DeBenedetto pled guilty to Count 2 of the indictment. In exchange, it is assumed that the government will dismiss the three-year mandatory-minimum count in the indictment and also recommend a lower sentence for Ms. DeBenedetto based on her testimony at trial.

## II.

### THIS COURT SHOULD PRECLUDE DETAILS OF THE COMPARTMENT CONTAINING THE MATERIAL WITNESS

Under Fed. R. Evid. 401, 402, and 403, Ms. Tapia moves to exclude any details about the compartment in which the material witness was hidden. Ms. Tapia also moves to exclude any testimony regarding the temperature in the compartment, as this information is unverifiable and irrelevant.[2] The size, nature and temperature of this compartment might be an appropriate sentencing issue in some cases. In no way, however, does the size, nature, and temperature of the compartment address an element of the crime; nor does it rebut any possible defense at trial. It is irrelevant to any disputed issue in this case.[3]

In contrast, however, it is incredibly prejudicial. Details of this compartment serve only to inflame and prejudice the jury, and could lead a jury to seek to punish Ms. Tapia regardless of fault. Under Fed. R. Evid.

---

[1] While Ms. DeBenedetto's phone call was videotaped, Ms. Tapia was told that she could only make a phone call "later" after her videotaped interview.

[2] This testimony will also confuse the material issues of this case. Specifically, should the government present evidence of high temperatures or discomfort, Ms. Tapia will consequently need to rebut this evidence by showing that the material witnesses both had jackets on in the compartment and there was a blanket-type cover in the compartment, apparently as a cushion. This creates a collateral issue that will only confuse the issue in Ms. Tapia's case-- knowledge. See F.R.E. 403.

[3] The government's motion *in limine* contends that the compartment was "in close proximity to [Ms. Tapia]." This is not correct. The compartment was apparently in the bag cargo area of the Jeep Cherokee, past the rear seats, and not even visible from Ms Tapia's passenger-seat location.

1  401, 402, and 403, this evidence should be excluded at trial.  Moreover, exclusion of this evidence will further
2  secure Ms. Tapia's Fifth and Sixth Amendment rights to a reliable jury verdict, and will eliminate the risks
3  of conviction based upon consideration of arbitrary and irrelevant evidence in violation of the Fifth
4  Amendment.

5       Therefore, the evidence on this point should be limited to testimony that the material witness was
6  discovered in the back of the van.  Any other evidence regarding the conditions inside the compartment should
7  be excluded.  See Fed. R. Evid. 401; 402; 403.  See also United States v. Unruh, 855 F.2d 1363, 1377 (9th
8  Cir. 1987) (admission of evidence with minimal probative value which could cause jurors to decide case on
9  legally irrelevant grounds could be abuse of discretion); United States v. Mehrmanesh, 689 F.2d 822, 830 (9th
10 Cir. 1992) (government must articulate basis for admissibility).

11      On the same grounds, the government should not be allowed to present evidence of the material
12 witnesses' "condition."[4]  Unlike the Schemenaur case cited by the government in its motions *in limine*, there
13 was no risk of death or requirement for any "expeditious removal" cited in that case.  United States v.
14 Schemenaur, 394 F. 3d 746, 752 (9th Cir. 2005); Gov't Motions at 10-11.  In fact, the material witnesses *could*
15 remove themselves from the compartment simply by lifting the metal plate over the compartment.  There was
16 no lock or screw holding them in the compartment.  Further, the issue raised in Schemenaur the defendant (1)
17 was the driver (2) who owned the truck.  Id.  Finally, Schemenaur presented a "sufficiency of the evidence"
18 question, not whether the introduction of this evidence was unduly prejudicial to a passenger in a car that she
19 did not own, and in which she was getting a ride.  In other words, the case is not on-point to the instant case
20 before the Court.  Finally, allowing the government to introduce this evidence would further confuse the only
21 issue at dispute in this trial– knowledge– by forcing the defense to contest the risk of injury or death to the
22 material witnesses when the government presents it as substantive evidence.  See F.R.E. 401; 402; 403.
23 //
24 //
25 //
26

---

27      [4] Neither material witness required medical attention in this case.  In fact, both material witnesses
28 appeared to be in fine "condition" at the time of their post-arrest interviews.  Neither complained of any
   discomfort or injury at the border.

### III.

### THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER *CRAWFORD*

The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the defendant is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Fed. R. Evid. 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently admissible for the statement to come into evidence. Fed. R. Evid. 805.

Here, the material witness told agents that "cousins"[5] made all of the arrangements for her to be smuggled into the United States with other unknown people.[6] The material witness did not personally make any arrangements, and she told agents that she did not make any payments at any point. Thus, anything that the material witness may know about financial arrangements comes not from her own knowledge, but from two levels of hearsay: first, what her cousins said to her; and second, what the "smugglers" allegedly told her cousins. The material witness' friend, who apparently made all of the arrangements, is not expected to testify at trial. Thus, Ms. Tapia will be deprived of her opportunity to confront these "unknown persons," whether cousins or a husband, about the alleged financial arrangements. Admission of statements through the material witness will accordingly violate Ms. Tapia's Sixth Amendment confrontation rights, and the admission of these statements would further violate the hearsay rules. This Court should exclude these statements at trial.

### IV.

### THIS COURT SHOULD PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE

Rule 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir.

---

[5] "Cousin" ["primo"] is a word used in the vernacular as meaning "dude" or "guy", not designating a familial relation, but a loose designation of unknown acquaintance. Should the Court ask, Ms. Tapia is able to present expert testimony on this point.

[6] At the material witness deposition, Ms. Bocanegra changed her testimony to say the her "husband" was the person making arrangements with unknown persons. The existence of either cousins or a husband has not been presented by the government or anyone else in this case.

1   1999). Ms. Tapia received general notice of some unspecified 404(b) evidence that the government intends
2   to introduce at trial. However, the notice fails to articulate (1) the dates or times of the events (i.e. alleged
3   prior smuggling acts of Ms. DeBendetto and Ms. Tapia), (2) the means or method or any other details of these
4   events (i.e. what kind of car was used, who was smuggled, origin and destination, etc.), or (3) corroborating
5   evidence of these alleged acts (i.e. TECS records). This notice is clearly insufficient under the terms of Rule
6   404(b). Therefore, it is Ms. Tapia's position that the government should be precluded from introducing such
7   evidence without proper notice.

8   Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances
9   and in the discretion of the court, as well. Here, Ms. Tapia timely requested notice of proposed Rule 404(b)
10  and Rule 609 evidence in her discovery requests to the government. In the event that the government
11  indicates an intention to introduce 609 evidence, it is Ms. Tapia's position that there is no appropriate 609
12  evidence. Ms. Tapia requests an opportunity to revisit this issue should the government indicate an intention
13  to introduce 609 evidence.

V.

**THIS COURT SHOULD PRECLUDE THE PROSECUTION FROM PROCEEDING
UNDER AN AIDING AND ABETTING THEORY ON ANY OF THE COUNTS**

17  Ms. Tapia asks this Court to preclude the government from proceeding under an aiding and abetting
18  theory on any of the counts in the indictment for the following reasons.

**A.   Aiding and Abetting Requires Proof of an Additional Element Beyond the Elements of the
       Underlying Offense and, Thus, This Element Must Be Alleged in the Indictment.**

21  The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to
22  answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."
23  U.S. Const. Amend. V; see also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted)
24  (stating that "[i]n this country the Founders thought the grand jury so essential to basic liberties that they
25  provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a
26  'presentment or indictment of a Grand Jury'"). An indictment must allege every essential element of the
27  offense, including implied elements not present in the statutory language. United States v. Du Bo, 186 F.3d
28  1177, 1179 (9th Cir. 1999); see also United States v. Pernillo-Fuentes, 252 F.3d 1030, 1034 (9th Cir. 2001)

1  (holding that specific intent must be alleged in indictment charging an attempted reentry by a deported alien);
2  accord Russell v. United States, 369 U.S. 749, 763-64 (1962). "If an element is necessary to convict, it is also
3  necessary to indict, because elements of a crime do not change as criminal proceedings progress."
4  United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential
5  element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the
6  indictment." Du Bo, 186 F.3d at 1179.

The Ninth Circuit has held that "[o]ur circuit law is clear that *aiding and abetting contains an additional element of specific intent*, beyond the mental state required by the principal crime."[7] United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (emphasis added); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (expressly stating that "the elements necessary to convict an individual under an aiding and abetting theory are . . . that the accused had the specific intent to facilitate the commission of a crime by another"); United States v. Andrews, 75 F.3d 552, 555-57 (9th Cir. 1996) (reversing defendant's convictions for aiding and abetting murder and attempted voluntary manslaughter because there was insufficient evidence to show that the defendant "specifically intended" to facilitate the commission of the offense by someone else). Because a defendant is constitutionally entitled to a grand jury finding on every essential element necessary to convict her, this additional intent element must also be alleged in the indictment before the Government may proceed under an aiding and abetting theory.

//
//

---

[7] Indeed, Sayetsitty described the "aiding and abetting" jurisprudence as being "paralleled by [the Ninth Circuit's] cases dealing with attempts." Sayetsitty, 107 F.3d at 1412. As the Ninth Circuit explained:

> Attempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant's purpose to commit the underlying crime--an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.

Id. Even if the substantive offense required proof of only general intent, aiding and abetting required proof of specific intent. Thus, because the district court failed to provide an intoxication instruction for a defendant charged with aiding and abetting, the Ninth Circuit reversed the conviction. Id. As Sayetsitty demonstrates, the Government's decision to proceed under an aiding and abetting theory may open the door to possible defenses unavailable to the principal. This need for notice underscores why this element must be alleged in the indictment.

**B.  The Cases Holding That the "Aiding and Abetting" Theory is Implied in Every Federal Indictment Are Not to the Contrary.**

It is true that the Ninth Circuit has stated *in dictum* that aiding and abetting is implied in every indictment.  See United States v. Armstrong, 909 F.2d 1238 (9th Cir. 1990); Gaskins, 849 F.2d at 1442; United States v. Michaels, 796 F.2d 1112, 1117-18 (9th Cir. 1986).  However, none of these cases examined the language used in the indictment; they only examined the jury instructions.  Accordingly, they do not resolve the question presented here.

Because the aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for acts which one assists another in performing," Nye & Nissen v. United States, 336 U.S. 613, 620 (1949), the acts set forth in section 2 merely describe the *means* of committing an offense.  Armstrong, 909 F.2d at 1243 (emphasis added); see also United States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987); Michaels, 796 F.2d at 1117-18.  Put another way, Armstrong and its antecedents do *not* hold that an indictment may omit the additional intent element required for a conviction under the aiding and abetting theory; they simply recognize that section 2 sets forth the *acts* of the defendant that expose him/her to liability as a principal.  Because these cases do not discuss the additional intent element which is necessary to convict a defendant under the aiding and abetting theory, they are inapposite.

**C.  United States v. Garcia Supports Ms. Tapia's Argument.**

In opposing this *in limine* motion, the Government may try to rely on United States v. Garcia, 400 F.3d 816 (9th Cir. 2005).  In Garcia, the Ninth Circuit held that aiding and abetting liability is simply an "alternative theory of liability."  Id. at 820.  However, the Garcia court was simply determining whether a unanimity instruction should have been given, and whether counts of the indictment were duplicitous.  Id. at 818-19.  The Court rejected these arguments.  Id. at 820.  Nonetheless, the court acknowledged that "[o]f course, to prove liability as an aider abettor the government must establish beyond a reasonable doubt that the accused had the specific intent to facilitate the commission of a crime by someone else - and this is an 'element' that need not be established for conviction on the underlying offense." Id. at 819.  Thus, the Garcia court acknowledged that aiding and abetting requires the government to prove the additional element of specific intent. It is well-settled Ninth Circuit law that, if the government is required to prove an element, they

//

are also required to include the element in the indictment. Hill, 279 F.3d at 741. The government has failed to include this "element" and the indictment is, as a result, deficient.

**D. Neither the Prosecution, Nor the Court, May Broaden the Permissible Bases for Conviction Beyond Those Charged in the Indictment.**

Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the Government to institute criminal prosecutions. United States v. Miller, 471 U.S. 130, 139 (1985). In accordance with these principles, the United States Supreme Court has observed that:

> [I]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Ex Parte Bain, 121 U.S. 1, 10 (1962), overruled on other grounds by United States v. Cotton, 122 S. Ct. 1781 (2002).[8] Indeed, the Ninth Circuit recently reiterated that the purpose of requiring that all elements be included in the indictment is not just to put the defendant on notice of the charges. The indictment also serves the purpose of ensuring that a defendant is never convicted of any crime, the elements of which were not all presented to the grand jury. United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005) (quoting and citing United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979) and Du Bo, 186 F.3d at 1179).

Accordingly, the Supreme Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. Stirone v. United States, 361 U.S. 212, 218 & n.3 (1960). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); see also United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (recognizing that the court may not constructively amend the indictment through its instructions to the jury); United States v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where district court instructed jury on work practice standard not alleged in indictment); United States v. Leichtnam,

---

[8] Cotton did not overrule Bain, Russell or Stirone. Cotton, 122 S. Ct. at 1785. Indeed, it expressly left this holding of Bain intact. Id. Nor did the court discuss whether an indictment error is a structural defect or whether such an error affects substantial rights. Id. at 1785-86. Thus, it does not aid this Court's analysis.

1  948 F.2d 370, 380-81 (7th Cir. 1991) (finding constructive amendment where indictment charged the
2  defendant with using a specific firearm and where the evidence and the district court's instructions
3  "broaden[ed] the possible bases for conviction to include knowingly using or carrying *any* firearm") (emphasis
4  in original). Indeed, one court observed that:

> [W]hat becomes essential to a charged offense in a particular case--that is, above and beyond what is necessary as a statutory matter--depends upon the structure of the indictment . . . and is completely within the government's control.

United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (internal citation omitted); United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990) (citations omitted) (finding constructive amendment and observing that "it must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged RICO conspiracy . . . It is the prosecution which sets the parameters to which a RICO conspiracy trial must be confined; having set the stage, the government must be satisfied with the limits of its own creation."). A constructive amendment always requires reversal because it deprives a defendant of his right to be tried only on the grand jury's charge. Stirone, 361 U.S. at 217; United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (*en banc*).

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, then neither the government, nor the district court, can broaden the indictment to include aiding and abetting as a possible basis for conviction.

**E.   The Indictment Here Does Not Authorize the Prosecution to Proceed under an Aiding and Abetting Theory, Thus this Court Should Make an *in Limine* Ruling to That Effect.**

Sayetsitty clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: The defendant must have specifically intended to aid the principal in the commission of the offense, and the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412. Aiding and abetting clearly requires proof of an *additional* intent element beyond the intent required by the statute. Id.

//
//
//
//

1  Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that
2 the defendant intended to aid a principal in the commission of the offense, in addition to proving the intent
3 elements attributed to the principal.[9] These are distinct elements, and under <u>Hill</u>, <u>DuBo</u>, and <u>Pernillo-Fuentes</u>,
4 all of these elements need to be alleged in the indictment. See <u>Du Bo</u>, 186 F.3d at 1179; <u>Pernillo-Fuentes</u>,
5 252 F.3d at 1032; <u>Hill</u>, 279 F.3d at 741. Because the indictment here failed to allege this additional intent
6 element, this Court may not allow the government to proceed under an aiding and abetting theory. A contrary
7 holding constructively amends the indictment and impermissibly broadens the scope of the charges.

**F.    The Indictment Does Not Reference 18 U.S.C. § 2 -- The Aiding and Abetting Statute.**

9  In addition to the fact that the government has not alleged the requisite intent to argue that Ms. Tapia
10 aided and abetted any crime, the government has not cited to the aiding-and-abetting statute in the indictment.
11 Thus, the grand jury clearly did not consider, or find, that Ms. Tapia had the specific intent to aid the principal
12 in the commission of the offense. For all of these reasons, this Court should preclude the Government from
13 proceeding under an aiding and abetting theory as to each of the counts.

## VI.

### THIS COURT SHOULD ALLOW VOIR DIRE OF ANY EXPERT WITNESSES OFFERED BY THE GOVERNMENT OR DEFENSE

17  Thus far, the government has given no notice of any expert witness testimony, nor has Ms. Tapia. If the
18 government (or either party) seeks to offer expert testimony, they must (1) timely notify the opposing party
19 at their earliest convenience of the expert and his or her qualifications; (2) provide a summary of the expected
20 testimony; and (3) provide a summary of the bases of the expert's opinion. Ms. Tapia respectfully requests
21 that this Court grant a motion *in limine* accordingly, to give effect to the discovery requirements of Rule 16,
22 and to afford the accused the opportunity to prepare her defense in this case. Since trial is set less than two
23 weeks away, Ms Tapia requests that either side be allowed the opportunity to voir dire any proffered expert
24 in this case.

25 //

---

[9] Indeed, here the pecuniary gain counts would require, *inter alia*, that the aider and abettor have the intent to have the principal reap personal financial gain. See <u>United States v. Munoz</u>, 412 F.3d 1043, 1046 (9th Cir. 2005) (holding that 8 U.S.C. § 1324(a)(2)(B)(ii) requires proof that the principal reap financial gain).

## VII.

## **THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE**

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments upon poverty are forbidden. United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). Specifically, the government should be precluded from referring to Ms. Tapia's unemployment or reliance on government benefits.[10]

Even before the Romero-Avila case, this Circuit had so concluded. In United States v. Mitchell, 172 F.3d 1104 (9th Cir.1999), the defendant was convicted of bank robbery and, at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

Id. at 1108-09. To be admissible, the court stated that the poverty evidence must be accompanied by something more, such as an "unexplained, abrupt change in circumstances." Id. at 1108-09. Ninth Circuit precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and immediate financial need. See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir.1989) (Reinhardt, J., dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir.1999) (evidence of poverty, absent "an unexplained abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461, 469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the United States government to comment on the indigency of a defendant.").

//

---

[10] The government appears to recognize its obligation to avoid making reference to Ms. Tapia's financial situation in its motions *in limine*. However, only by way of clarification, Ms. Tapia is not "homeless", as the government contends in its motions. Gov't Motions at 7, lns. 21-22.

1     "Poverty comments" may not be made even when the evidence commented upon is admitted by the
2 defense. Romero-Avila, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000). Romero-Avila specifically rejected
3 the very argument that the defendant is barred from challenging comments upon improper poverty testimony
4 because he elicited it during cross-examination, and held that the government's comments were plain error.
5 As such, regardless of any evidence proffered by the defendant as to her financial circumstances, any reference
6 to the defendant's financial situation must be excluded.

## VIII.

## THE COURT SHOULD EXCLUDE THE GOVERNMENT'S CASE AGENT

9     The Court may not exclude "a person whose presence is shown by a party to be essential to the
10 presentation of the party's case" during a trial. Fed. R. Evid. 615(3). The government has made no showing
11 that its case agent is such a person. Should the Court grant the government's motion to include the case agent
12 at counsel table, Ms. Tapia request, at the very least, some showing be made by the government why this
13 witness is "critical in moving the investigation forward to this point" as quoted in its motions *in limine*. Gov't
14 Motions at 7, lns. 13-14.

## IX.

## THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

18     In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," the
19 Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly
20 recommends that the indictment not be sent into the jury room during deliberations. The commentary
21 observed that neither the Federal Rules of Criminal Procedure, nor case law, require sending a copy of the
22 indictment to the jury room because the indictment is not evidence.
23     Ms. Tapia urges this Court to follow the Committee's guidance. The language in the instant indictment
24 "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the
25 similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the
26 charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade
27 those jurors without experience with the grand jury system that another jury had already found Ms. Tapia
28 //

1  guilty. Ms. Tapia also requests that this Court caution the jury that the indictment is not evidence. See United
2  States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

### X.
### THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Ms. Tapia's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

### XI.
### THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts when the defense can show a particularized need. The particularized need present in this case is that a witness may have testified before the grand jury, who will likely testify at Ms. Tapia's trial. The government must produce a transcript of a witness' testimony before the grand jury following the direct examination of a witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Fed. R. Crim. P. 26.2(d).

Additionally, Ms. Tapia moves for the production of grand jury transcripts, even if the grand jury witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that witness likely testified based upon information provided by other agents. The government has, thus, adopted the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See Fed. R. Evid. 801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party to make a statement concerning the subject matter," see Fed. R. Evid. 801(d)(2)(C), and constitutes "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," see Fed. R. Evid. 801(d)(2)(D).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible

as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this Court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might be Brady material, or otherwise subject to production, as explained above.

## XII.

### THIS COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people, who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the government must prove to convict Ms. Tapia. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[11]

## XIII.

### THIS COURT SHOULD PROHIBIT VOUCHING BY THE GOVERNMENT DURING TRIAL

Impermissible vouching must not be allowed during the government's case-in-chief, rebuttal or during the government's closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony" See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). The Supreme Court has held:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.*

---

[11] Ms. Tapia is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies, as well.

Berger v. United States, 295 U.S. 78, 88-89 (1935). Similarly, the Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury . . . ." United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005). As the Ninth Circuit has explained:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994), quoting United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir.1984).

It is also impermissible for government agents to vouch for themselves or each other. In United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur through the testimony of a government agent because the jury might easily identify the agent's position with the integrity of the United States. In fact, the Court noted that when that happens, vouching occurs in a "very powerful form." Id. Mr. Valera requests the Court prohibit such impermissible vouching in his trial to ensure its fairness.

## XIV.

### THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM SOLICITING TESTIMONY REGARDING MS. TAPIA'S POST-ARREST SILENCE

Ms. Tapia moves to preclude the government from eliciting testimony regarding her post-arrest silence as substantive evidence of guilt or impeachment. Specifically, at the points where Ms. DeBenedetto was answering agents questions at primary or secondary inspection and Ms. Tapia remained silent, agents may testify that Ms. Tapia "sat there silent" while Ms. DeBenedetto lied. This is constitutionally protected behavior.

In Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240, 49 L.Ed.2d 91 (1976), the Court held that "the use for impeachment purposes of [a defendant's] silence, *at the time of arrest* and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." Id. at 619, 96 S. Ct. 2240 (emphasis added). In Doyle, the prosecutor used testimony about a defendant's post-Miranda silence to impeach the defendant at trial. The Supreme Court held that the right to remain silent contains an implicit assurance "that

1 silence will carry no penalty." Id. at 618, 96 S. Ct. 2240. "[I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. Based on the preceding, all evidence of Ms. Tapia's post-arrest silence should be excluded.

## XV.

## THIS COURT SHOULD GRANT LEAVE TO FILE OTHER MOTIONS

To the extent that there is outstanding discovery that the government has not yet produced, or the interest of fairness or judicial economy otherwise require it, Ms. Tapia requests leave to file further motions *in limine* as may be necessary.

## XVI.

## CONCLUSION

For the foregoing reasons, Ms. Tapia respectfully requests that the Court grant the above motions *in limine*.

Respectfully submitted,

DATED: March 21, 2008

/s/ Stephen D. Demik
**STEPHEN D. DEMIK**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Tapia